Arnold NAMROW and Lillian Namrow, and Jay C. Maxwell and Dorothy N. Maxwell, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 8126.

United States Court of Appeals Fourth Circuit.

Argued Jan. 19, 1961.

Decided March 27, 1961.

Elizabeth S. Freret, Washington, D. C. (Wenchel, Schulman & Manning, Washington, D. C., on the brief), for petitioners.

Fred E. Youngman, Atty., Dept. of Justice, Washington, D. C. (Abbott M. Sellers, Acting Asst. Atty. Gen., and Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

Upon this petition for review we must decide whether there is sufficient evidence to sustain the ruling of the Tax Court that expenditures made by two psychiatrists in order to qualify themselves to practice psychoanalyses are not deductible in computing their taxable income. The Commissioner of Internal Revenue determined a deficiency against Dr. Arnold Namrow and his wife for the year 1954 in the sum of $376.84, and against Dr. Jay C. Maxwell and his wife for 1954 and 1955 in the respective sums of $290.90 and $639.44. The cases were consolidated for trial and the determinations of the Commissioner were sustained. In each case the taxpayer was engaged in the practice of psychiatry in Washington, D. C. during the tax years and paid certain fees as a student in the Washington Psychoanalytic Institute for training in psychoanalysis. The deductibility of these expenditures gives rise to the instant controversy.

Psychiatry is a medical specialty which deals with the study and treatment of mental disorders and is recognized as a specialty by the American Medical Association, the American Psychiatric Association, and the American Neurological Association. The minimum qualification of a doctor as a psychiatrist consists of graduation from a recognized medical school, one year of general internship,

and one year of specialized residency in an institution for the treatment of mental disorders which has been approved by the American Medical Association and the American Psychiatric Association. In actual practice full recognition as a psychiatrist is obtained only by additional years as a resident psychiatrist in a mental institution and passing an examination set by the American Board of Psychiatry and Neurology.

Still further training is required if a psychiatrist desires to obtain general recognition as one qualified to practice in the special field of psychoanalysis. This method for the treatment of mental disorders derives its importance from the studies of Sigmund Freud, who conceived the idea of the unconscious mind and developed a method of analyzing a person's mental life which is now widely accepted by psychiatrists as a form of psychotherapeutic treatment. Psychotherapy is a general term which includes, according to qualified witnesses in this case, sitting down with the patient and encouraging him to talk freely to the doctor about himself so as to discover his history and his emotional and personal difficulties. It is sometimes described as the "talking cure", which is generally employed by psychiatrists and more or less consciously by ministers of religion and laymen whose work involves consultation with persons in difficult situations. The most intensive form of this treatment is psychoanalysis, which is described by the taxpayers in this case as "the revolutionary technique originated by Freud in which emotionally maladjusted but otherwise intelligent adults explore deeply into the workings of their conscious and unconscious minds by talking freely with the psychiatrist until they ultimately are able to recognize and re-examine rationally those intense feelings and experiences which theretofore were buried in and distorted by the unconscious mind."

It is generally recognized by psychiatrists that the technique originated by Freud demands an exceptional degree of emotional objectivity and control on the part of the doctor. On this account spe-cialized institutes for the training and supervision of prospective analysts have been set up in fourteen cities in the United States and organized in accordance with regulations and standards of the American Psychoanalytic Association. The Washington Psychoanalytic Institute attended by the taxpayers was one of these institutes and a description of its operations demonstrates the special training which, in the opinion of the medical profession in general and of its psychiatric branch in particular, is needed to qualify a psychiatrist to practice psychoanalysis.

In its annual bulletin the Washington Psychoanalytic Institute is denominated a school for the training of psychiatrists in the theory and practice of psychoanalysis. It has a faculty of nineteen doctors listed as "supervising and training analysts" and seven doctors listed as "teaching analysts". Formal registration of students takes place in September, and lectures and seminar instruction are given in two semesters beginning on September 28 and January 15, respectively. Applicants must have served creditably a general internship of one year in a Class A hospital approved by the American Medical Association, and have had one year full-time work in a psychiatric hospital approved by the American Medical Association and the American Psychiatric Association. It is also understood that the applicant shall have completed three years of approved psychiatric training prior to the completion of his training in psychoanalysis.

Furthermore, the applicant must pledge himself in writing neither to conduct psychoanalytic treatment nor to represent himself as a psychoanalyst until he has been authorizd to do so by the faculty of the Institute.

The bulletin of the Washington Psychoanalytic Institute describes the three general divisions of the training program. This includes, first, a preparatory analysis of the applicant himself, the duration of which may require several years. Its objective is freedom from personality factors that would interfere with the abili-

ty to conduct psychoanalytic treatment. The second division of the training, called "Theoretical Instruction", consists of a graduated series of lectures and seminars covering the theory and technique of psychoanalysis. The third division of the training program requires the student to conduct a minimum of four analyses of patients under supervision. The patients are seen at least four times a week and the student is to have at least two supervising analysts. A minimum total of two hundred hours of supervision of analysis is required. Finally, the student, availing himself of the advice of his supervising analyst, will prepare a clinical paper regarding the course of his work with a patient and submit a copy of the paper to an examining panel of three members of the Education Committee. The bulletin sets forth the curriculum for each year for three years but in actual experience the training program usually requires a much longer period. Upon its completion the student is entitled to membership in the Washington Psychoanalytic Society, whose members are entitled to membership in the American Psychoanalytic Association.

Since the students of the Washington Psychoanalytic Institute must be qualified psychiatrists they customarily engage in the private practice of psychiatry while taking the training at the Institute and both taxpayers in this case were so engaged during the tax periods. Dr. Arnold Namrow was awarded the M.D. degree by Washington University, St. Louis, Missouri, in 1947, and served an internship in St. Elizabeth's Hospital, Washington, D. C. Thereafter he was a resident in psychiatry in two veterans' hospitals in Washington from August 1948 to February 1951. He was a medical officer in the Navy from February 1951 to February 1953, and for a portion of 1953 was a psychiatrist in a veterans' hospital and later in a child guidance clinic. In September 1953, he entered private psychiatric practice in Washington, meanwhile having applied, in June 1953, for entrance into the Washington Psychoanalytic Institute. In 1954, he commenced the preparatory part of the training program, consisting of personal analysis, under Dr. Mabel Cohen, a member of the faculty of the Institute, and continued therein until March 1957. During 1954 he paid Dr. Cohen $2,250 for his personal analysis, and also paid Dr. Douglas Nobel, also a member of the faculty, the sum of $375 for services as supervising analyst. He expected to finish his training at the Institute in 1960 and thereupon become eligible for membership in the psychoanalytic associations.

Dr. Jay C. Maxwell was awarded the degree of M.D. by the Medical School of Duke University of 1948 and served a year of general internship and a year of psychiatric residency, so that he became a qualified psychiatrist in October 1950. Subsequently he became a trainee at the Chicago Psychoanalytic Institute from which he transferred to the Washington Institute in 1953. He completed his training in personal analysis in Chicago in 1953 and made payment of $280 therefor in 1954 to the psychoanalyst who had charge thereof. During 1954 and 1955 he paid various sums, which aggregated $705 in the former and $1,185 in the latter year, to divers members of the faculty of the Washington Psychoanalytic Institute for services as supervising analysts. He also paid $270 in 1954 and $610 in 1955 for lectures and seminars in his course at the Institute with the expectation of finishing his training in 1960. During the tax years he engaged in the practice of psychiatry in Washington.

Each taxpayer claims that his expenditures for personal analysis and for the services of supervising analysts were deductible as ordinary and necessary expenditures under § 162 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162, but the Commissioner disallowed these claims. Dr. Maxwell also claims deductions for the depreciation of his automobile and automobile expenses in 1954 and 1955. The automobile expenses were disallowed to the extent that they were incurred in attendance upon the course of

instruction at the Washington Psycho-analytic Institute.

The Tax Court, five judges dissenting, upheld the Commissioner's determinations. Its decision is based largely on the interpretative application of § 162 of the Code, which is contained in § 1.162–5 of the Treasury Regulations entitled "Expenses for Education". The gist of this section of the regulations is that expenditures for education are deductible if the education is undertaken primarily for the purpose of maintaining or improving skills required by the taxpayer in his trade or business, but are not deductible if they are for education undertaken for the purpose of obtaining a new position or substantial advancement in position or in order to meet the minimum requirements for qualification in his intended trade or business or specialty therein.

 The validity of the regulation is not disputed.[1] The question is whether, under the undisputed facts, the cases fall into one category or the other. We think there is sufficient evidence to support the Tax Court's position. The preponderance of the evidence plainly shows that neither an ordinary physician nor one who has had sufficient additional training to practice psychiatry is considered qualified to practice psychoanalysis unless he has submitted to long and intense additional education and training in the psychoanalytic field. These requirements are not based on statute but on the body of medical opinion that finds expression in representative and recognized medical societies and particularly in the formation of the psychoanalytic institutes in great centers of population which set the standards that are accepted in practice.

Most persuasive of the existence of these requirements is the conduct of the taxpayers themselves in making substantial expenditures of money and devoting long periods of time in intensive training while practicing psychiatry in order to secure the recognition of their professional brethren as competent to engage in the practice of psychoanalysis. It is admitted that their general purpose was to secure referrals from other physicians, which are necessary in the successful practice of psychoanalysis. To this end each of them pledged himself not to administer psychoanalytic treatment or represent himself as a psychoanalyst until he had been authorized to do so by the faculty of the Institute, and each acknowledged that seven years will have passed before his training at the Institute is complete. It was explained by psychiatrists testifying on their behalf that the purpose of the pledge was to make sure that the student is competent before he goes into practice and that a reliable psychiatrist did not hold himself to be an analyst without completing the Institute's course. Thus there is solid ground for the conclusion of the Tax Court that the expenditures were made in order to acquire a special skill not possessed by ordinary psychiatrists. In this respect the Tax Court said:

"We think it fairly appears from this record that a psychiatrist cannot establish himself as a pyschoanalyst without completing an Institute. This becomes more evident from other testimony to the effect that psychiatrists obtain most all of their patients by referrals from other doctors, principally other psychiatrists, because they prefer not to treat people with whom they are acquainted. In view of this, it is extremely unlikely that a psychiatrist could ever establish a psychoanalytic practice without attendance at an Institute. Namrow testified he received the majority of his referrals, and Maxwell, a substantial number of his referrals, from colleagues at the Institute".

In opposition the taxpayers point to evidence given on their behalf by qualified psychiatrists and psychoanalysts to

---

1. The rules laid down in the regulations are in accord with the decisions of the courts. See Hill v. Commissioner, 4 Cir., 181 F.2d 906; Coughlin v. Commissioner, 2 Cir., 203 F.2d 307; Kamins v. Commissioner, 25 T.C. 1238; Cardozo v. Commissioner, 17 T.C. 3; Marlor v. Commissioner, 2 Cir., 251 F.2d 615.

the general effect that the dividing line between psychiatry and psychoanalysis is very thin. They say that psychoanalysis is merely an intensive form of psychotherapeutic treatment customarily administered by psychiatrists and that psychiatry is recognized as a specialty by the American Medical Association but psychoanalysis is not. They add that sometimes practicing psychiatrists or even ordinary physicians subject themselves to personal psychoanalysis, since it enables them to practice their profession more effectively;[2] that candidates for training in the Washington Psychoanalytic Institute sometimes come to the Institute after they have already engaged in psychoanalytic practice and that trainees in the Institute are allowed to call themselves psychoanalysts (under supervision) after they have undergone personal analyses for a period of one year. Moreover, it is said that a general practitioner of medicine without analytic training may legally practice psychoanalysis, although he would not be considered qualified by psychiatrists and would not get referrals from them. For all of these reasons it is said that the Institute does not teach a new skill but merely improves the skill which every psychiatrist possesses.

It is contended in addition, in this aspect of the case, that the fees paid by the taxpayers were deductible as business expenses under § 162(a) (1) because the personal psychoanalysis to which candidates in an institute are subjected and the supervision of their analyses of patients during their course of training constitute professional consultations similar to those which occur when one physician calls in another for diagnosis and treatment of a patient. It is said, moreover, that the fees paid are business expenses in a very practical sense as the cost of obtaining new business (as in Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769), since the training produces referrals that the candidates would not otherwise obtain.

■ This evidence and these arguments are not without persuasive force, but they are not so weighty as to compel us to conclude that the findings of fact of the Tax Court are so clearly untenable and erroneous that under the rule the judgment of the Tax Court must be reversed. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; City Ice Delivery Co. v. United States, 4 Cir., 176 F.2d 347. To some extent at least the evidence produced by the taxpayers support the Tax Court's determination. It cannot be disputed that all of the activities for which the fees were paid, including the psychoanalyses of patients under supervision after completion of the first year of training, were parts of a course of training which, in the opinion of psychiatrists generally, is needed to qualify a psychiatrist to engage in a certain type of psychiatric practice. These activities do not lose their quality as training techniques because they were similar to those used by qualified practitioners. The true purpose and effect of an expense govern its deductibility. See Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001; Rollman v. Commissioner, 4 Cir., 244 F.2d 634. The experts produced by the taxpayers clearly held the opinion that a psychiatrist should not hold himself as a psychoanalyst unless he had completed long years of training at a psychoanalytic institute. The basic question of fact, whether psychoanalysis requires the acquisition of a new skill or the improvement of one already possessed, still remains to be answered; and the existence throughout the country of psychoanalytic institutes and societies and the organization of the American Psychoanalytic Association on a national scale support the view that even if psychoanalysis is not formally recognized as a specialty by the American Medical Association, it is in

2. See John S. Watson, 31 T.C. 1014.

effect so regarded by a large body of medical opinion without whose approval it cannot be successfully practiced.

The taxpayers make the alternative contention that the expenditures were deductible under § 213 of the 1954 Code, 26 U.S.C.A. § 213, which allows the deduction of expenses for medical care of a taxpayer under 65 years of age to the extent that the expenses exceed 3 per cent of the adjusted gross income. Under this section the Commissioner has ruled that such medical expenses include payments for services of qualified psychiatrists. Rev.Rul. 55–261, 1955, 1 C.B. 307. This contention was rejected by the Tax Court unanimously and, we think, correctly. The members of the faculty of the Institute who rendered services to the taxpayers were not called in to treat them for illness but to train them to practice a profession.

Affirmed.