GRANT AND HELEN R. GILMORE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83452. Filed August 29, 1962.

*Boris I. Bittker, Esq.*, for the petitioners.
*James E. Markham, Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined deficiencies in income taxes of petitioners in the amounts of $607.61 and $946.48, respectively, for the taxable years 1956 and 1957.

Grant Gilmore, husband of Helen R. Gilmore, is a party only because he and his wife filed joint returns for the years in question. The issues before us relate solely to the activities of Helen R. Gilmore who will be referred to herein as petitioner.

The issues presented involve the question of whether or not expenses for tuition, supervisory consultation, and travel expenses incurred

by petitioner, a practicing psychiatrist, in relation to training and qualification as a psychoanalyst are deductible by petitioner as business expenses within the meaning of section 162 of the Code of 1954.

FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference.

Petitioner filed joint income tax returns with her husband for the calendar years 1956 and 1957 with the district director of internal revenue for the district of Connecticut.

During the years in question, petitioner was engaged in the practice of psychiatry in New Haven, Connecticut, and held a part-time teaching post in the Department of Psychiatry of Yale University, with the rank of clinical associate professor.

Psychiatry is that branch of medicine which deals with the study and treatment of mental disorders. Psychiatry is a medical specialty recognized as such by the Advisory Board of Medical Specialties and by the American Medical Association.

The minimum qualification of a doctor as a psychiatrist is achieved by graduation from a recognized medical school, 1 year of general internship, and 1 year of specialized residence in an approved institution treating mental disorders.

Psychoanalysis consists of a system of theories to explain the mental life of a person and of a technique for treating a patient in order to enable him to alter his behavior and personality structure.

Psychoanalysis is defined by Webster's New International Dictionary, second edition, as follows:

(a) The method developed by Sigmund Freud for analyzing the content and mechanisms of a person's mental life, for purposes of psychotherapy. By dream analysis and similar devices it aids the patient to discover and relive his unconscious memories and desires and to adjust his mental conflicts.

(b) The body of facts discovered by this method.

(c) The system of theories based on these facts, and dealing esp. with the repression of desires into the unconscious and with the infantile sexuality as the source of conflicts and neuroses.

(d) The interpretation of facts from other sources in the light of these theories.

The practice of psychoanalysis has not been recognized as a medical specialty by the Advisory Board of Medical Specialties. Psychoanalysis is in fact, however, a medical specialty, making use of specialized methods and techniques in treatment. It is not a branch of psychiatry. As a basis for qualification as a psychoanalyst and recognition as such by the medical profession, an extensive specialized course of training in both theory and practice, similar to that followed by petitioner, in an institute similar to those attended by petitioner,

is required. All such institutes in the United States require substantially the same specialized training. In all of them, an applicant must sign a pledge that he will neither conduct psychoanalytic treatment nor represent himself as a practitioner of psychoanalysis until he is authorized to do so by the educational committee of the institute.

The Western New England Institute for Psychoanalysis was incorporated under the laws of the State of Connecticut on June 30, 1953, in accordance with the regulations and standards of the American Psychoanalytic Association. It is one of some 14 similar institutes located in principal cities of the United States, 1 of which is the Washington Psychoanalytic Institute. Another such institute is the New York Psychoanalytic Institute.

The objectives of the Western New England Institute for Psychoanalysis are to advance the development of psychoanalysis based on the discoveries of Sigmund Freud; to train selected and qualified students in psychoanalytic theory and practice; and to promote psychoanalytic education and research in accordance with the training standards of the American Psychoanalytic Association. It accepts applications for enrollment both from psychiatrists and from persons who are not psychiatrists but who have proven research interests and competence.

The program of the institute consists of (a) a personal psychoanalysis; (b) a program of didactic courses and seminars; and (c) supervised clinical work. The supervised clinical work consists of the treatment of patients in psychoanalysis under the supervision of a supervising psychoanalyst approved by the Institute.

Petitioner graduated from Yale University with the degree of doctor of medicine in 1931. Her subsequent professional training and experience was as follows:

| | |
|---|---|
| 1931–32 | Sterling Fellowship for research in neurosurgery, Yale University. |
| 1932–33 | Internship, University of Chicago Billings Hospital. |
| 1933–35 | Sterling Fellowship for research in neurosurgery, Yale University. |
| 1935–36 | (6 mos.) Internship in psychiatry, University of Chicago Billings Hospital. |
| 1936 | (9 mos.) Research associate in psychiatry, Harvard University McLean Hospital. |
| 1936–38 | Resident in psychiatry, Department of Psychiatry, Yale University. |
| 1938–41 | Instructor in psychiatry, as above. |
| 1941–42 | Fellow in pediatrics (child psychiatry), Yale University. |
| 1942–45 | Half-time at Yale University as clinical instructor; half-time private practice in psychiatry, New Haven, Connecticut. |
| 1945 | Assistant, Philadelphia Child Guidance Clinic. |
| 1946–47 | Director, Waterbury Mental Hygiene Clinic, Waterbury, Connecticut, and private practice in psychiatry, New Haven, Connecticut. |

1947    Clinical assistant professor, Yale Department of Psychiatry (part time).

1948–51    Director, in-patient service, Department of Psychiatry, Yale University, with rank of assistant professor.

1950–51    Consultant to Veterans' Administration, Psychiatric Clinic, Hartford, Connecticut.

1951–to date    Private practice, New Haven, Connecticut, with part-time teaching post at Yale, as clinical associate professor in Department of Psychiatry.

1952–54    Psychiatric consultant to Family Service, New Haven.

1953–55    Part-time teaching (courses in psychiatry) at Connecticut School of Social Work, Hartford.

1954–55    Chief psychiatric consultant, Waterbury Psychiatric Clinic.

Petitioner's training in psychiatry included study under a number of trained psychoanalysts, some of whom had been psychoanalyzed by Dr. Sigmund Freud, and from the beginning of her training in psychiatry she was exposed to psychoanalytic theory and research of the Freudian type. In her capacity as a teacher at Yale and in supervising third-year students in a psychiatric training program at Yale, petitioner made use of psychoanalytically-oriented psychotherapy from 1940 on. Psychoanalytically-oriented psychotherapy consists of using the concepts and theories of psychoanalysis, but not its technique of treatment, in the practice of psychiatry.

In 1948, petitioner was physician in charge of the mental hospital section of the department of psychiatry at the Yale Medical School. Her duties consisted, in part, of training first-year residents in a special program for psychiatry and in teaching psychiatry to medical students.

Prior to 1959, petitioner was not a qualified practitioner of psychoanalysis and did not hold herself out as such. Graduation from one of the approved institutes was required before she could qualify and be recognized as a psychoanalyst by medical practitioners. Upon her graduation from Western New England Institute for Psychoanalysis, she was qualified as a psychoanalyst and thereafter has been engaged as a practitioner of psychoanalysis (as well as a practitioner in psychiatry).

Petitioner's decision to apply for admission to the New York Psychoanalytic Institute related to her duties at Yale University in the sense that her teaching of residents was analytically-oriented psychotherapy and she felt that she could augment her knowledge in that field by going into analysis. The Department of Psychiatry of the Yale Medical School had a policy at that time of encouraging psychiatrists on its staff to undertake the training in psychoanalysis offered by such institutes, and supported petitioner's decision to enroll in the New York Institute by awarding her a fellowship in the amount of $1,000. Her enrollment at the New York Psychoanalytic Institute

was not intended in any way to qualify her for advancement in rank at Yale University or qualify her for a higher salary, nor was such training a prerequisite for advancement to higher rank.

In accepting petitioner, the New York Institute took account of her prior training in psychoanalytically-oriented psychiatry by permitting her to attend classes and seminars a month after she commenced her personal psychoanalysis, whereas the institute usually required 200 or more hours of personal psychoanalysis before taking classes. The institute also dispensed with its ordinary requirement of out-patient clinical work in view of petitioner's prior experience.

Because of her hospital duties, the demands of raising a family, and the time required to commute to New York City, petitioner terminated her relationship with the New York Institute in 1951, knowing that an institute was in the process of being formed in New Haven. In 1954, petitioner commenced her attendance at courses of the Western New England Institute for Psychoanalysis and continued them through the taxable years 1956 and 1957.

In transferring from the New York Institute to the Western New England Institute, petitioner's purpose or motivation in obtaining psychoanalytic training did not change. It was then, and at the time of the trial, related, in part, to her duties and teaching at Yale Medical School.

At the time petitioner enrolled at the New York Psychoanalytic Institute (1948), she was not engaged in private practice. Since 1951, she has engaged in the private practice of psychiatry in New Haven, along with her part-time teaching post at Yale University with the rank of clinical associate professor in the Department of Psychiatry. In undertaking her studies at the Western New England Psychoanalytic Institute, petitioner did not intend to give up the practice of psychiatry. After her graduation from the institute, petitioner engaged in private practice as a psychiatrist and also as a psychoanalyst.

Petitioner paid $450 as tuition to the Western New England Institute for Psychoanalysis in the calendar year 1956 and $405 in the year 1957.

In 1956 and 1957, petitioner treated certain patients in psychoanalysis and paid $600 (1956) and $1,220 (1957) to two physicians who served as supervising analysts for these cases, under the program of the Western New England Institute. In her meetings with the supervising analysts, petitioner discussed the course of treatment of the patients and was advised by the supervising analysts as to the appropriateness of her treatment and as to the implications of the treatment to her as a trainee and to the patient who was undergoing therapy. These supervisory sessions served both the purpose of educating Dr. Gilmore and the purpose of insuring that the patient's treatment was appropriate to his or her needs.

In order to attend certain of the seminars of the Western New England Psychoanalytic Institute and in order to consult the supervising analysts, petitioner made a number of trips between New Haven, Connecticut, and Stockbridge, Massachusetts. In 1956, petitioner incurred expenses of $124.28 for food and lodging on these trips. In 1956, in the joint return, there was deducted $395.23 as the expense of operating an automobile. The statutory notice of deficiency disallowed $197.61 of this amount on the ground that it was incurred in connection with attendance at the Western New England Psychoanalytic Institute. Of the $395.23 deducted, part represented the transportation expense of trips between New Haven and Stockbridge and part represented the cost of traveling between petitioner's office and a hospital. None represented social use of the automobile. In 1957, petitioner incurred expenses of $269.96 for food, lodging, and transportation on trips between New Haven and Stockbridge.

### OPINION.

This case focuses upon the question of whether or not the principles announced in *Arnold Namrow*, 33 T.C. 419 (1959), affd. 288 F. 2d 648, certiorari denied 368 U.S. 914 (1961), are here controlling. Petitioner's brief states in effect that she does not take issue with *Namrow*. It is argued on her behalf, however, that the facts in *Namrow* are different from those in the instant case; that these differences are significant, and that, therefore, *Namrow* is not here decisive.

We limit our discussion accordingly.

### *Tuition.*

Petitioner claims that the expenses for her tuition at Western New England Institute for Psychoanalysis were incurred primarily for the purpose of improving her skill and competence as a psychiatrist and teacher of psychiatry. She adds that, while not required to take the institute training, she was encouraged to do so as a matter of policy by those in authority at Yale and was granted a fellowship of $1,000 in relation thereto. She argues, therefore, that such expenses are deductible under the provisions of section 1.162–5, Income Tax Regs., 1958–1 C.B. 67.[1]

---

[1] Sec. 1.162–5 Expenses for education.—(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, * * *

* * * * * * *

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * *

We are unable to agree with this viewpoint. We have no doubt that her teaching interests represented one of the reasons for her taking the institute course, but the record fails to support this as her primary reason, and she herself agrees that it was not her sole reason. In her brief, it is stated (and the record supports the statement) that her "purpose in undertaking and continuing her training was to improve her skill and competence in psychiatry." The record, however, fails to support the view that the two purposes above referred to, taken together, were her sole or primary purposes. After graduating from the institute, she engaged in the private practice of both psychiatry and psychoanalysis. She testified that psychoanalysis was not a branch of psychiatry, and that psychoanalysis was a medical specialty of its own at least as to method and technique, although she added that "on theoretical grounds I cannot make that sharp a distinction." There may well be some overlapping between the practice of psychiatry and that of psychoanalysis but upon the record before us we cannot accept the view that petitioner, a practitioner of psychiatry (a medical specialty separate from psychoanalysis) took expensive and time-consuming training in psychoanalysis primarily to improve her skills as a psychiatrist. The record presents no evidence that petitioner's purpose in taking the institute's course did not include the intent to engage in the private practice of psychoanalysis as well as psychiatry upon her graduation from the institute. Since she did engage in psychoanalytical practice after she qualified by graduation from the institute, it might well be inferred that this was at least one of her purposes. In any event, there is no evidence to the contrary.

It is true that petitioner testified she did not intend to give up the practice of psychiatry and that she did not have any expectation that her training in psychoanalysis would increase her average hourly charge to patients, or her average annual income. On the other hand, there is no suggestion that, when she did engage in the private practice of psychoanalysis after graduation, she failed to charge the customary fees.

In addition to the contentions above discussed, petitioner argues that the instant case is distinguishable from *Namrow* in three respects.

The first of the three arguments is to the effect that in *Namrow* the

---

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement * * *. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

taxpayers were close to the inception of their professional careers, whereas petitioner had an extensive professional history and was no longer in the process of establishing herself in practice.

We find no significance in the argument, and add that while petitioner no doubt had a substantial background as a teacher and as a psychiatrist, she had no such background in psychoanalysis and was not qualified to hold herself out as a specialist in that field until she graduated from the institute.

The second argument is to the effect that in *Namrow* the taxpayers made no showing of prior training in Freudian psychoanalysis where-- as Dr. Gilmore had been trained by persons immersed in Freudian concepts with the result that the New York Institute relaxed its requirements in recognition of her prior training and experience.

We likewise find no significance in this argument. Moreover, while petitioner studied psychiatry under persons "immersed" in Freudian concepts, there is no evidence that she herself was so immersed. Her own testimony was to the effect that she had been "exposed" to psychoanalytic theory and research.

The third argument is to the effect that in *Namrow* there was no indication that the employers of the doctors in *Namrow* suggested, encouraged, or supported their psychoanalytic training in any way, but that, in contrast, petitioner's employer had a policy of encouraging such study and gave her financial support.

We find nothing in this contention which supports petitioner's position.

Upon consideration of all of the facts and circumstances relating to the claimed allowance of tuition, we find petitioner has failed to prove she is entitled to a deduction under the provisions of section 162 of the Code of 1954 as implemented by section 1.162–5 of the applicable regulations.

## Fees of Supervising Analysts.

The Western New England Institute for Psychoanalysis required that an enrolled student (such as petitioner) engage in supervised clinical work, consisting of the psychoanalytic treatment of at least two adult patients for not less than 4 hours a week under the supervision of at least two supervising psychoanalysts approved by the institute. Pursuant to this program, petitioner paid $600 in 1956 and $1,220 in 1957 to her supervisory analysts.

Petitioner concedes the supervisory sessions were required by the institute and served an educational purpose. She argues, however, that they also served the function of insuring that the treatment of the patients was suited to their needs. She urges that the supervision was comparable to that which might be sought by a qualified psycho-

analyst who had encountered difficulties in the treatment of a patient and who thought that his difficulties might be solved by consultation with a more experienced psychoanalyst.

We cannot agree with petitioner's contention. By her own admission, she was not a qualified psychoanalyst. The supervision was conducted as part of her training course required by the institute, and there is no evidence that the analysis itself would have been undertaken if it had not been required as part of the training course. By the same token, there is no evidence that the supervisors would have been consulted if the course had not required it.

No doubt the patient received some benefit from the supervision, with its greater insurance of competent treatment. Nevertheless, it appears from a consideration of the record that the primary purpose of the supervision was the education of a trainee in accordance with the requirements of a specialized course conducted by an institute which specialized in such training. We find nothing to support the view that the primary objective of the supervision was other than educational.

Petitioner concedes that if we find, as we do, that the supervisory fees were educational expenses, they must stand or fall with the tuition charges considered *supra*.

### Travel Expenses.

Petitioner concedes that the deductibility of travel expenses depends upon the deductibility of the tuition expenses and supervisory fees. On the basis of our decision as to these items, we hold that the travel expenses are not allowable as deductions.

*Decision will be entered under Rule 50.*