**Sanford H. MARKHAM and Sylvia Markham, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

June 30, 1965.

Michael P. Graff, New York City, for plaintiffs; Sanford H. Markham, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for defendant; Harvey R. Blau, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

The plaintiffs have sued for a tax refund in the amount of $3,303.73 plus interest. This sum was paid to the defendant pursuant to a determination by the Commissioner of Internal Revenue of a tax deficiency for the year 1958 in the amount of $2,211.73 and for the year 1959 in the amount of $1,092.00. Timely claims for a refund were filed and after expiration of six months plaintiffs commenced this refund suit. The action was tried before the court without a jury.

After hearing the testimony of the parties, examining the exhibits, the pleadings, the briefs and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The plaintiff, Sylvia Markham,[1] attended Cornell University and Barnard College, graduating from Barnard College in June 1927 with an A.B. Degree. During this time she completed nine courses in psychology for a total of twenty-eight credits. In 1927–28 she took courses in history at Columbia University, Graduate Faculty of Arts and Sciences. From 1927 to 1945 she was a licensed teacher in the City of New York and taught history and economics in the New York high school system. (3) [2]

2. In 1934, plaintiff took a course at the New School For Social Research entitled, "General Principles of Psychoanalysis." (3)

3. In 1949, plaintiff enrolled as a student in the Department of Psychology, New York University Graduate School of Arts and Sciences. Upon completion of

---

1. Sanford H. Markham is a party plaintiff solely by virtue of the fact that he filed a joint return with his wife, Sylvia Markham. Hereinafter, Sylvia Markham is referred to as the plaintiff.

2. Numbers in parentheses following the Findings of Fact refer to pages in the trial transcript.

nine courses in psychology for a total of thirty-three credits and the publication of a certain thesis, she was awarded an A.M. Degree in June 1952.

4. From 1951 to 1953, plaintiff worked in the Mt. Sinai Hospital as a research assistant in psychology. From 1952 to 1953, she attended the New York Psychoanalytic Institute and completed a course in "Psychoanalytic Concepts in Education." From 1953–1955, plaintiff worked at Mt. Sinai Hospital as a psychologist engaged largely in research and diagnostics. (4)

5. At Mt. Sinai Hospital in the period between 1951 and 1955, while plaintiff was employed there, psychologists were permitted to do diagnostic work and research (555) and participate in clinical conferences, but were not permitted to do psychotherapy. Plaintiff did not engage in any psychotherapy at Mt. Sinai. (556) At Mt. Sinai the rule was that only medical doctors were permitted to do psychotherapy. (257–258)

6. From 1956 through 1959, plaintiff worked at the Hillside Hospital, Queens, New York, as a psychologist engaged in research and diagnostics. (4) During the period plaintiff was at the Hillside Hospital, the hospital did not permit psychologists to engage in psychotherapy or treatment of patients. (253–258, 346)

7. On May 1, 1957, plaintiff was certified as a psychologist by the New York State Education Department (4) under a provision which required at least an M.A. Degree and eight years of experience, whereas all other persons were required to have a Ph.D. Degree. (503–504)

8. In 1957, plaintiff was accepted into the training program of the National Psychological Association for Psychoanalysis, Inc. (hereinafter "NPAP"). (4) From 1957 through 1959, NPAP was a professional association organized for the advancement of psychoanalysis as a profession and as a science. Its major activities consisted of a membership society for practicing psychoanalysts and a training program for student affiliates. (Ex. 7, p. 4; Ex. 8, p. 4; see also 609–610) In 1957, in order to qualify for enrollment at NPAP, an applicant was required (1) to hold a Master's Degree in a field of inter-personal relations; (2) to be of a minimum age of twenty-five years; (3) to undergo a personal analysis of three hours per week. (Ex. 7, p. 7) In an enrollment questionnaire filed by plaintiff as part of the processing of her application, she referred to previous clinical work and experience only in diagnostics and research, and in stating her anticipated goal of studies at the NPAP she wrote: "to become a psychoanalyst and member of the NPAP." (Ex. 4) During the period of her enrollment in the NPAP, plaintiff underwent personal analysis with Dr. Edward Frankel, a member of the faculty of NPAP. (4, 5) On August 22, 1957, plaintiff was interviewed by Dr. Nandor Fodor with respect to her enrollment application. (Ex. C) Plaintiff in this application stated that her clinical work was restricted to diagnosis and testing and that she had not been permitted to do therapy at hospitals, that she was "tired of this" and felt she could do therapy. (Ex. C)

(9) On September 5, 1957, plaintiff was accepted as an enrolled student at NPAP. (Ex. I) Between 1957 and 1959 NPAP required students to complete at least thirty courses, including a minimum of eight advanced seminars and, as aforesaid, to undergo a successful personal analysis to complete the program to become an associate member and a psychoanalyst. (Ex. 7, p. 7)

(10) Didactic analysis is a teaching analysis and at NPAP in 1957 and 1958 it was part of the training of the student to undergo didactic analysis. (610–12) During the period of plaintiff's enrollment as a student at NPAP she underwent personal psychoanalysis with Dr. Edward Frankel, a member of the faculty of NPAP (4–5), from September 1957 to June 1959. On or about October 13, 1960, a letter signed by Edward Frankel, Ph.D. was submitted on behalf of plaintiff to the Internal Revenue Service (298–300), which letter, addressed "To Whom It May Concern," reads: "This is to state

that Mrs. Sylvia Markham * * * was in psychoanalytic treatment with me for emotional disturbances during the time of September 1957 to June 1959." (Ex. D)

11. By April 17, 1958, plaintiff had completed over 100 hours and by the time the next fall semester began, it was stated, she would have the required 200 hours of personal analysis. (Ex. L) In 1958, the second level of progress towards the completion of study at NPAP to qualify a student as a psychoanalyst, was "matriculation." (Ex. 7, p. 8; Ex. 8, p. 7; 218–220) The policy at NPAP in 1957 and 1958 was to take in a large number of applicants without screening and at the end of a certain time the students were re-evaluated to determine potentials for training. This was "matriculation" and was a more careful screening (218) in order to accept these students into the school and to enable them to go ahead with their training to become psychoanalysts. (219) Many people drop out before matriculation. The next step was readiness for "control." (615) On April 1, 1958, the plaintiff applied for matriculation. (See Ex. 5) On June 5, 1958, plaintiff was accepted as a matriculated student. (Ex. 6)

12. On April 17, 1958, after plaintiff applied for matriculation, Dr. Nandor Fodor, an adviser, stated in a report in reference to the plaintiff that "she intends to apply for therapy at the Theodor Reik Clinic as soon as she passes matriculation." (Ex. L) Subsequent to such matriculation, plaintiff began working as a psychologist at the Theodor Reik Clinic for Mental Health. (5) Apparently it was not until at least 1959 that plaintiff did any psychotherapy work at the Theodor Reik Clinic. (See 293–94) It appears that she was working under a supervisor at the Theodor Reik Clinic from December 1958 to at least September 17, 1959. (See Ex. F) Her "controls" were Dr. Irwin Herbst and Dr. Gisella Barinbaum. Her training was largely the two control therapists to whom she reported once in two weeks for a fifty-minute session. She had received no similar training before. (295)

13. Plaintiff said she wanted to receive supervision at Reik and receive it free. (302) She said she could have done it privately and could have obtained private control but it would have cost her $15 to $20 an hour. (303) Plaintiff conceded that when she started to work at the Reik Clinic she had had no similar training. (295)

14. Psychoanalysis is a specialized form of psychotherapy. (203) One of the witnesses, Dr. Lefer, testified that "psychoanalysis is a learned skill and art which utilizes very rigid disciplines of self-investigation and training. * * * It utilizes scientific methods to investigate the part of the mind of the patient that is not normally available to him * * * ." (335) "Its goal is to * * * effect characterlogical changes in the patient so that I can utilize his full potentialities * * * and to remove what blocks are necessary for him to have full utilization of his resources." (336) A psychologist, to become a psychoanalyst, must first be familiar with psychotherapy and then go on to an institute such as NPAP. (342–43)

15. The record is unclear as to the status of psychotherapy within the field of psychology. (453, 499, 523–25) However, regardless of the classification of psychotherapy within the field, prior to 1957 plaintiff had received no control or supervision in psychotherapy. (67, 196, 260–61, 295; Ex. C) After her enrollment at NPAP and the commencement of her work at the Reik Clinic, plaintiff began practicing psychotherapy which now constitutes 75% of her practice. (67, 196)

16. I find that plaintiff's primary purpose in enrolling and studying at NPAP and undergoing personal analysis, as required by that institute, was to become a psychoanalyst and/or a psychotherapist. (Ex. 4, Anticipated Goal: "To become a psychoanalyst"; Ex. 5, Application for Matriculation: "so that I may be allowed to take the more advanced

courses.") The courses indicated were psychoanalysis courses. (See Ex. 6) Plaintiff's own testimony as to why she continued at NPAP indicates that she wished "to be a good psychotherapist." (283) One of plaintiff's purposes in continuing in the NPAP program was in order to be able to get into the Reik Clinic to do psychotherapy. (294) She wanted to get preparatory supervision as a therapist (302) and control. (303)

17. The plaintiff has failed to prove by the fair preponderance of the evidence that at the time she underwent personal analysis it was customary or usual for clinical psychologists to undergo a course of study at a psychoanalytic institute and to undergo personal analysis. (215–216)

18. There is no proof that plaintiff in the years 1957 through 1959 was required by any employer to attend any analytic institution such as NPAP or to undergo a personal analysis as a requirement for maintaining her job.

19. In her 1958 return plaintiff deducted the sum of $3,675 for money paid to Dr. Edward Frankel for personal analysis and $334 for tuition paid to NPAP. Both these amounts were disallowed as business deductions by the Internal Revenue Service, which assessed a tax deficiency in the amount of $1,752.84, plus interest of $458.89; plaintiff paid this sum to the District Director of Internal Revenue. In her 1959 return plaintiff deducted the sum of $1,675 for the cost of her personal analysis and study at NPAP; the Internal Revenue Service disallowed this deduction, assessing a tax in the amount of $1,092, which plaintiff paid to the District Director; on August 26, 1963, plaintiff filed a claim for refund of these sums and later commenced this action in 1964.

## DISCUSSION

### THE ISSUE

The issue in this case is whether or not the monies expended by plaintiff in 1958 and 1959 for her personal (didactic) analysis and for tuition at NPAP are ordinary and necessary business expenses within the meaning of Section 162 of the 1954 Code. The defendant contends that these monies were expended by plaintiff for her education, undertaken primarily for the purpose of obtaining a new skill and as such are not deductible as ordinary and necessary business expenses. The defendant asserts that the evidence clearly indicates that plaintiff attended NPAP from 1957 through 1959 and subjected herself to the didactic analysis as required by that school for the *primary purpose* of becoming a psychoanalyst, a specialty in a new skill as far as she was concerned. The government further argues that, even in the event that the court should conclude that plaintiff's intent changed in December 1957 in that she no longer wished to become a psychoanalyst, her primary purpose at that time was to become a psychotherapist, a skill which plaintiff did not then possess.

The plaintiff, on the other hand, avers that the expenditures made in 1957, 1958 and 1959 for personal didactic analysis and for tuition at NPAP were to maintain and improve her skills and were in fact customary and usual for all psychologists and are, therefore, deductible as ordinary and necessary business expenses.

In reply to the latter contention, the defendant asserts (1) that before plaintiff could improve her skills in psychoanalysis and psychotherapy she would first have to have a skill, which the government contends she actually did not possess; (2) that it is clearly demonstrated that in 1957 and 1958 it was not customary and usual for psychologists to study at an analytic institute or to submit to personal didactic analysis.

### STATUTES

Section 162 of the Internal Revenue Code of 1954 provides as follows:

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

The Treasury Regulations under the Internal Revenue Code of 1954, Section 1.162–5, outline the circumstances under which education expenses are deductible as ordinary and necessary business expenses under Section 162. The regulations provide in part as follows:

"§ 1.162–5. Expenses for education.—(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

"(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

"(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

\*   \*   \*   \*   \*   \*

"(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense

of such education is personal in nature and therefore is not deductible."

Under Internal Revenue Regulation 1.162–5, interpreting Section 162, educational expenses incurred *primarily* for the purpose of obtaining a new position or a new skill are not deductible. See Namrow v. Commissioner of Internal Revenue, 4th Cir. 1961, 288 F.2d 648, cert. denied 368 U.S. 914, 82 S.Ct. 192, 7 L.Ed.2d 132 (1961); Grant Gilmore, 38 T.C. 765 (1962).

Plaintiff's primary intent when she entered NPAP and underwent personal analysis was to become a psychoanalyst (see Findings of Fact Nos. 8, 9, 11, 16) and/or a psychotherapist. (See Findings of Fact Nos. 8, 12, 13, 15, 16) Plaintiff, therefore, incurred the contested expenses primarily for the purpose of obtaining a new skill. The facts demonstrate that plaintiff's educational efforts at NPAP and in personal analysis were, if not to become a psychoanalyst, to become a psychotherapist. (See Finding of Fact No. 16)

In spite of the fact that plaintiff seeks to convince the court that in November or December 1957 she changed her mind and no longer wished to become a psychoanalyst, her acts, including the continuance of the NPAP program, the personal analysis, her application for matriculation and her continuance with advanced courses, demonstrate otherwise. " 'Actions speak louder than words' " in many cases in the judicial ascertainment of someone's subjective intent. See Army Times Sales Co., 35 T.C. 688, 704 (1961).

The courts have held in like cases that expenses incurred by a psychiatrist to train to become a psychoanalyst are not deductible. Namrow v. Commissioner, 4th Cir., 1961, 288 F.2d 648, cert. denied, 368 U.S. 914, 82 S.Ct. 192, 7 L.Ed.2d 132 (1961); Grant Gilmore, 38 T.C. 765 (1962). Cosimo A. Carlucci, 37 T.C. 695 (1962) is clearly distinguishable from the Namrow case. Carlucci, a qualified *industrial psychologist,* was allowed to deduct the expense of additional courses

in the field of *industrial psychology*, the Tax Court finding that he pursued these courses primarily for the purpose of improving his skill as an *industrial psychologist*.

Furthermore, the proof does not demonstrate that it was usual or customary for clinical psychologists to study at a psycholanalytic institute and to undergo personal analysis in 1957. (See Finding of Fact No. 17) Plaintiff has failed to prove that prior to 1957 she had any skill in psychotherapy or psychoanalysis on which to predicate improvement. (See Findings of Fact Nos. 5, 6, 8, 12, 13, 14, 15)

 As stated in Bishop v. C. I. R., 342 F.2d 757, 759 (6th Cir. 1965):

" * * * A taxpayer seeking a deduction must point to an applicable statute and show that he comes within its terms. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. The burden of proof to establish a deduction and the amount of it is upon the taxpayer. Botany Worsted Mills v. United States, 278 U.S. 282, 289–290, 49 S.Ct. 129, 73 L.Ed. 379; Reinecke v. Spalding, 280 U.S. 227, 232–233, 50 S.Ct. 96, 74 L.Ed. 385; Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991. * * * "

### CONCLUSIONS OF LAW

1. This court has jurisdiction of this action pursuant to 28 USC § 1346.

 2. The sums expended by plaintiff in 1958 and 1959 for tuition at NPAP and to Dr. Edward Frankel for personal didactic analysis are not ordinary and necessary business expenses under 26 U.S.C. § 162 (1954 Internal Revenue Code). They were not incurred primarily for purpose of maintaining or improving any skill possessed by plaintiff but were incurred primarily for the purpose of obtaining a new skill or profession.

3. In 1957 and 1958, it was not customary or usual for clinical psychologists to undergo training at a psychoanalytic institute or undergo personal didactic analysis.

4. Defendant is entitled to a judgment dismissing the complaint with costs.

Settle judgment on notice.