RAMON M. GREENBERG AND SHIRLEY J. GREENBERG, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1661–64. Filed February 24, 1966.

*Jack H. Calechman*, for the petitioners.
*Albert R. Doyle*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in petitioners' 1961 income tax in the amount of $894.30. The issue is whether Ramon M. Greenberg, who will be called petitioner, is entitled to a deduction for the amount he paid in 1961 for psychoanalytic training at the Boston Psychoanalytic Institute.

### FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

Petitioner is by profession a psychiatrist. The minimum qualification of a doctor as a psychiatrist is achieved by graduation from a recognized medical school, 1 year of general internship, and 1 year of specialized residency in an approved institution treating mental disorders. The institution must be approved by the American Medical Association and the American Psychiatric Association. A psychiatrist who has achieved the minimum qualification may properly practice psychiatry without any further training.

No special examination is required in order to qualify for the practice of psychiatry but maximum formal recognition is achieved by additional years as a resident physician in a mental institution, additional years of practice of psychiatry, and passing examinations set by the American Board of Psychiatry and Neurology.

Petitioner graduated from Harvard Medical School in June of 1954. He was an intern in the Boston City Hospital from July 1954 until June of 1955. He then had a year (July 1955 to June 1956) of residency in the neurological unit of that hospital. He spent the next year (July 1956 through June 1957) as a psychiatric resident at the Boston Veterans' Administration Hospital and the following year through June 1958 as a psychiatric resident at the Cincinnati General Hospital. From July 1958 to July 1960 petitioner was a medical officer in the U.S. Air Force. After his military service he again became associated with the Boston Veterans' Administration Hospital, and in March of 1961 he passed his psychiatric board examination.

It was during petitioner's first year of residency at the Boston Veterans' Administration Hospital that he applied for admission to the Boston Psychoanalytic Institute. His application was accepted but

he did not start his analysis or training at the institute until August of 1960, after he had completed his military service.

The Bulletin of the Boston Psychoanalytic Institute for the years 1961–62, which is a stipulated exhibit, contains the following opening paragraph:

The Boston Psychoanalytic Institute, the professional school of the Boston Psychoanalytic Society and Institute, Inc., is an approved training unit of the American Psychoanalytic Association. Its chief function is the training of psychiatrists who wish to specialize in the clinical practice of psychoanalysis and to utilize its method and theory in teaching and research. Candidates who graduate from this training program are eligible for membership in the Boston Phychoanalytic Society and Institute, Inc., and, two years after graduation, may apply for membership in the American Psychoanalytic Association.

Petitioner has continued his training at the institute, which normally consists of 6 or 7 years. He works half time at the Boston Veterans' Administration Hospital teaching medical students, residents, social work students, and doing research. He also had a part-time private practice of psychiatry.

During the year 1961 petitioner paid the institute $3,650 which he deducted as a business expense. In his notice of deficiency respondent disallowed the deduction. In his petition petitioner alleges error in said disallowance on the sole ground that he "incurred analysis expenses of $3,650.00 in the taxable year 1961 in order to maintain or improve needed skills required by him in his profession."

OPINION

Section 162(a) of the Internal Revenue Code of 1954 provides as follows:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) In General.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

Section 1.162–5(a)(1) of the Commissioner's regulations provides as follows:

Sec. 1.162–5 Expenses for education.

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

In two companion cases that involved two psychiatrists who incurred the same type of expense for their psychoanalytic training as is here involved, we held such expense was not deductible as business expenses. See *Arnold Namrow*, 33 T.C. 419 (1959), affd. 288 F. 2d 648, certiorari denied 368 U.S. 914 (1961). Again in *Grant Gilmore*, 38 T.C. 765, we held a practicing psychiatrist and part-time professor of

psychiatry at Yale (Helen R. Gilmore) could not deduct expenses incident to her attendance at a psychoanalytic institute. In the above-cited cases the position of the taxpayers was that the expenditures were made primarily for the purpose of improving their skills as psychiatrists and thus deductible under section 1.162–5(a)(1) above. We held that their attendance at an institute for 6 or 7 years of psychoanalytic training was for the purpose of acquiring a new specialty or a new skill and not for improving or sharpening up a skill they already possessed. Petitioner makes the same argument here and he asks us to overrule *Namrow* and adopt the reasoning of the dissenting opinion of Judge Black in that case—much of which is quoted in petitioner's brief. We are not convinced *Namrow* was wrongly decided.[1] We see no reason to again set forth at length the considerations or reasoning that led us to the conclusion there reached. This case cannot be distinguished from the *Namrow* and *Gilmore* cases. The considerations which led to those decisions also govern here.

Petitioner makes an effort to distinguish the *Namrow* and *Gilmore* cases. Petitioner argues that in those cases the psychiatrists testified they undertook the psychoanalytic training in order to become practitioners of psychoanalysis while here petitioner did not expressly indicate that this was his reason for seeking admission to the institute. He did say his reason for taking the training was to improve his skills as a psychiatrist, but we do not find any place in his testimony where he says this was his primary reason, and at another place in his testimony he said psychiatrists usually take 3 years of residence and sometimes 4 or 5. He had only 2 years of psychiatric residency plus his neurology year but he testified he considered analytic training as continuation of psychiatric residency. Nowhere in his testimony does he say that he does not intend to practice psychoanalysis when he graduates from the institute. In fact, the indications in his testimony are to the contrary. When his attorney asked him his intentions with respect to practicing psychoanalysis when he finished at the institute he gave a long, equivocal answer (about a page and a half in the transcript) which is hard to understand but it rather indicates his intention to treat some patients at the hospital where he works with psychoanalysis, and also use psychoanalysis in his private practice and also retain what he calls his "academic affiliation." He also said he expected to receive "referrals" and it is a reasonable inference from all of his testimony that by "referrals" he meant patients referred to him for psychoanalytic treatment.

---

[1] In *Markham* v. *United States*, 245 F. Supp. 505 (S.D.N.Y. 1965), the court cited the *Namrow* and *Gilmore* cases and disallowed the claimed deduction for taxpayers' expenses incurred in securing psychoanalytic training at the National Psychological Association for Psychoanalysts.

This record would hardly warrant a finding that petitioner did not intend to hold himself out as a practicing psychoanalyst when he completed his 6 year course at the institute. Without indicating that such a plan not to practice (which could be legitimately abandoned the day after graduation 6 years later) would be a factual difference that would point to a legal distinction between this case and *Namrow*, we hold under the record here that this case and *Namrow* and *Gilmore* cannot rationally be distinguished. We are not prepared to abandon the position taken in the cited cases. We hold for respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*

HOYT, *J.*, concurs in the result.

FORRESTER, *J.*, dissents.

---

WITHEY, *J.*, concurring: I concur in the result of the majority reached herein but cannot agree that the existence of a plan or intention on the part of the taxpayer to practice as a psychoanalyst has any bearing upon the conclusion whatsoever. *Arnold Namrow*, 33 T.C. 419, affd. 288 F. 2d 648, and *Grant Gilmore*, 38 T.C. 765, stand for the proposition that where a taxpayer has acquired a new skill, whether or not that skill will aid him in the carrying on of an existing trade or profession, the expense of acquiring the new skill is personal in nature and nondeductible under section 262 of the 1954 Code. To me, it is unrealistic, not to say naive, to consider that in enacting section 162(a) of the 1954 Code Congress would leave the deductibility or nondeductibility of such an expense to the mere whim of the taxpayer. Under *Namrow* and *Gilmore*, the existence of an intention or plan to use a new skill acquired has no bearing upon the deductibility of the expenses incident to the acquisition of that skill. Nothing can be more personal to a taxpayer or more uncertain in its character than his intention or whim.

In my view confusion on this issue has resulted in large part from respondent's regulation, sec. 1.162–5(a)(1). If the wording "Maintaining or improving skills required by the taxpayer in his employment or other trade or business * * *" is to be read to allow deduction of the expense of acquiring a new skill based only upon the intention or whim of the taxpayer with respect to the ultimate practice of that skill, that section of the regulation goes way beyond the framework of section 162(a) of the Code and should be held to be invalid.

BRUCE, *J.*, agrees with this concurring opinion.

---

FAY, *J.*, dissenting: As trier of the facts, I respectfully disagree with the majority which disallows a deduction to petitioner for the cost of his analytic training. I believe that the majority opinion not

only violates the spirit of the income tax regulation in question but also disregards its specific wording.[1]

After receiving his medical degree in 1954 and completing his internship, petitioner pursued his career in psychiatry, chosen while still in medical school. He undertook 3 years of residency, 1 in neurology and 2 in psychiatry, which he completed in 1958. At this point, petitioner had met all the minimum requirements established by the American Medical Association for the practice of psychiatry. Petitioner then served for 2 years as a medical officer in the U.S. Air Force, during which time he practiced psychiatry. Upon leaving the Air Force, petitioner joined the staff of the Boston Veterans' Administration Hospital as staff psychiatrist. His duties there also included the teaching of psychiatry to residents at the hospital. Clearly, petitioner was a qualified and practicing psychiatrist. It was then that petitioner began his analytic training at the institute.

In order to prevail in this case, petitioner must show that the educational expenses for analytic training were incurred primarily for the purpose of maintaining or improving a skill which he already possessed, to wit, psychiatry. As stated in the regulations, whether or not a taxpayer satisfies this requirement "shall be determined upon the basis of all the facts of each case."[2]

A reading of the regulation reveals that whether or not educational expenditures are deductible depends upon the "primary" purpose for which the education was undertaken. *Cosimo A. Carlucci*, 37 T.C. 695 (1962); Rev. Rul. 60–97, 1960–1 C.B. 69. A determination of this subjective test can be made only after taking into consideration all the facts and circumstances of the particular case. Accordingly, decisions in other cases although helpful, do not and cannot control here.

The only witness in this case was the petitioner. His uncontradicted testimony regarding the reason for which he undertook analytic training can be summarized as follows: Petitioner testified that he spends his time divided into three segments. He does research in the field of psychiatry, he teaches psychiatry to medical students, residents, and social workers, and he maintains a small private practice of psychiatry. He further testified that the analytic training offered at the institute would greatly aid him in all these segments of his work.

---

[1] The pertinent part of sec. 1.162–5, Income Tax Regs., upon which both parties rely provides that:

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, * * *

    *        *        *        *        *

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. * * *

[2] See fn. 1, *supra*.

I disagree with the majority that the record in the instant case "would hardly warrant a finding that petitioner did not intend to hold himself out as a practicing psychoanalyst" when he completed his analytic training. Having had the opportunity to observe the petitioner, I found this testimony not only believable and uncontradicted but also realistic.[3] Petitioner testified that some doctors undertake analytic training for the purpose of engaging solely in the practice of psychoanalysis, while others do so for the help such knowledge will give them in their field of psychiatry. Petitioner stated he was in the latter category. I believe and would find that after taking into consideration all the facts of this case, petitioner undertook analytic training primarily to maintain and improve his skill in his specialty—psychiatry—and not for the purpose of acquiring a new skill or to qualify himself as a psychoanalyst in order to engage exclusively in such a practice.[4]

The fact that by undertaking this training petitioner might be acquiring a new skill is of no importance. See *Cosimo A. Carlucci, supra* at 702. This is conceded by respondent. Rev. Rul. 60–97, *supra* at 71. Even this Court has recognized that the acquisition of a new skill does not preclude the deduction where the new skill was helpful and beneficial in maintaining and improving a skill already possessed by the taxpayer. The best examples of this are the numerous cases which have been decided by this Court allowing accountants, internal revenue agents, an insurance adjuster, and an Air Force employee to deduct the cost of obtaining a bachelor of laws degree. Clearly a law school education which qualifies one to enter the field of law constitutes the acquisition of a new skill—a skill not previously possessed by any of the taxpayers involved. Nevertheless, the deduction was allowed. See also *Welsh* v. *United States*, 329 F. 2d 145 (C.A. 6, 1964); *Fortney* v. *Campbell*, — F. Supp. — (N.D. Tex. 1964, 13 A.F.T.R. 2d 1619, 64–1 U.S.T.C. par. 9489). I can see no

---

[3] That petitioner was not a skillful witness was very apparent during his appearance on the witness stand. However, despite the vagueness of petitioner's testimony on direct examination, when asked by respondent on cross-examination whether he "undertook the analytic training * * * to improve [his] field as a psychiatrist," petitioner stated unequivocally that such was his purpose.

[4] The word "primary" does not mean "only" or "exclusive." The word itself presupposes that the taxpayer may have more than one purpose for undertaking the education. So in this case, where the petitioner may make use of his analytic training in his private practice of psychiatry by utilizing the "skill" of psychoanalysis on his patients, this does not necessarily mean that his primary purpose was to obtain this "skill" for the purpose of exclusively engaging in the practice of psychoanalysis. I recognize that petitioner was not unaware that this training would enable him to practice psychoanalysis. However, based upon this record, this was not petitioner's primary purpose for undertaking the analytic training. See *Marlor* v. *Commissioner*, 251 F. 2d 615 (C.A. 2, 1958), reversing 27 T.C. 624 (1956). *Devereaux* v. *Commissioner*, 292 F. 2d 637 (C.A. 3, 1961), reversing and remanding a Memorandum Opinion of this Court.

difference between those cases and the present one. See also *John S. Watson*, 31 T.C. 1014 (1959).

On the basis of the foregoing, I would hold for petitioner.

FORRESTER, *J.*, agrees with this dissent.

---

DAWSON, *J.*, dissenting: Under existing Treasury regulations the ascertainment of primary purpose is, to a great extent, dependent upon the Court's subjective impression of the petitioner and his intent. Here, as the trial judge who heard the testimony, Judge Fay concluded that the petitioner undertook analytic training at the Boston Psychoanalytic Society and Institute primarily for the purpose of maintaining and improving his skills as a practitioner, teacher, and researcher in the field of psychiatry. I believe we should accept Judge Fay's factual conclusions, recognizing of course that it is the "primary purpose" test itself which sets the fact finder "to sail on an illimitable ocean of individual beliefs and experiences." Cf. *Commissioner* v. *Duberstein*, 363 U.S. 278, 297.

Section 162(a),[1] I.R.C. 1954 (which provides the only statutory authority for allowing a deduction for educational expenses), has been applied in educational expense cases by this Court in such a way that it has produced a hodgepodge of seemingly irreconcilable opinions.[2]

If expenses are "ordinary and necessary" within the meaning of section 162 and proximately related to a taxpayer's work, then they are deductible. Educational expenses are not special items requiring special rules. In my opinion they should be treated like any other basic expense item and should be judged by the same standards. "Necessary" means "appropriate and helpful to the taxpayer's business." *Blackmer* v. *Commissioner*, 70 F. 2d 255 (C.A. 2, 1934). And "ordinary" means the common experience of such expenses in the taxpayer's particular business. *Deputy* v. *du Pont*, 308 U.S. 488, 495; and *Welch* v. *Helvering*, 290 U.S. 111, 113–114. Or, in other words, "normal, usual or customary." Since other businesses deduct the

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a), IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

[2] Compare *John S. Watson*, 31 T.C. 1014 (an internist who was allowed to deduct expenses for training in psychiatry), and *Cosimo A. Carlucci*, 37 T.C. 695 (a research analyst who was allowed a deduction for expenses incurred in studying for a Ph. D. degree in industrial psychology), with *Arnold Namrow*, 33 T.C. 419, affd. 288 F. 2d 648 (C.A. 4, 1961), certiorari denied 368 U.S. 914 (a practicing psychiatrist who was denied a deduction for expenses incurred in acquiring training in psychoanalysis), and *Grant Gilmore*, 38 T.C. 765 (also a practicing psychiatrist and professor who was denied a deduction for expenses incurred in studying psychoanalysis) ; compare also *Welsh* v. *United States*, 329 F. 2d. 145 (C.A. 6, 1964), with *Condit* v. *Commissioner*, 329 F. 2d 153 (C.A. 6, 1964) ; see and compare *Harold H. Davis*, 38 T.C. 175 ; *Reuben B. Hoover*, 35 T.C. 566 ; and *Michaelson* v. *United States*, 203 F. Supp. 830, affd. 313 F. 2d 668 (C.A. 9, 1963).

expenses of carrying on their operations, should professional people such as doctors, lawyers, accountants, engineers, and teachers be denied their "ordinary and necessary" business expenses incurred in maintaining and improving their skills? If the majority of this Court thinks so, it seems to me that they are swimming against the tide of educational, scientific, and medical advancement in America today.[3]

There is no doubt that Congress has supported a liberal interpretation of what constitutes deductible educational expenses. See S. Rept. No. 1983, 85th Cong., 2d Sess., p. 110 (1958).[4] When the regulations, including sec. 1.162-5, were promulgated in 1958, they were made to apply retroactively to all 1954 Code years. This resulted from pressure exerted on Congress for legislative action in this area. At the time of their promulgation, a bill, extremely liberal in nature, was pending before Congress.[5] After the regulations were issued and hailed as a "liberalization" of the policy governing education expenses, the sponsor of the pending legislation stated that they obviated the necessity of enacting his bill. However, the genuine "liberalization" which the taxpayers expected from an interpretation of the regulations was not forthcoming. Instead, the rather strict and narrow construction placed on the regulations by the Commissioner and this Court in many instances has caused education expense deductions to become one of the most frequently litigated issues in the Federal income tax field.

Our first opinion following the issuance of the regulations, *John S. Watson*, was a good beginning, but its effect was short-lived because our majority opinion in *Arnold Namrow* returned us to what I regard as a narrow, unrealistic, and hypertechnical interpretation of the regulations. I disagree with the majority opinion in *Namrow*. I think it was incorrectly decided, just as I think the majority is wrong in following it here. Since I think dissenting views [6] are often helpful, I feel compelled to comment on the *Namrow* opinion. The majority in *Namrow* did not concern itself with the alleged *purpose* of the two psychiatrists to improve their skills. Having decided that psychoanalysis was a *specialty*, they concluded that the expenses could not be deducted unless the psychiatrists were already psychoanalysts before taking the training. Thus the majority substituted *result* for *primary purpose*. Moreover, I think an erroneous conclusion was reached that psychoanalysis is a specialty. Even the Court of Appeals casts doubt on this conclusion. See *Namrow* v. *Commissioner*, 288 F. 2d at 652, where the Court of Appeals said: "The basic question of fact,

---

[3] See State of the Union Address (1965), 111 Cong. Rec. 26–29.

[4] It is noteworthy that Congress also enacted sec. 96 of the Technical Amendments Act of 1958 to extend the time for filing claims for refund so that taxpayers could benefit from the new Treasury regulations issued in 1958.

[5] H.R. 4662, 85th Cong., 1st Sess. (1957).

[6] As the late Chief Justice Hughes once said, a dissent is "an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error in which the dissenting judge believes the court to have been betrayed."

whether psychoanalysis requires the acquisition of a new skill or the improvement of one already possessed, still remains to be answered." Psychiatry, as I view it, is that branch of medicine which deals with the science and practice of treating mental, emotional, and behavioral disorders while psychoanalysis is merely an area of psychotherapeutic practice or one of the methods used by a psychiatrist. Frankly, I am unable to reconcile the opinion in *Namrow* with that of *Watson* or *Welsh* v. *United States*.

Whenever a bona fide business purpose exists, that fact should tend, in my judgment, to prove affirmatively that the education expense is "ordinary and necessary" to the taxpayer's trade or business.

It is unfortunate that this Court has too often followed a very strict line with respect to educational expenses, only to be reversed on appeal. See *Devereaux* v. *Commissioner*, 292 F. 2d 637 (C.A. 3, 1961); *Brooks* v. *Commissioner*, 274 F. 2d 96 (C.A. 9, 1959); *Marlor* v. *Commissioner*, 251 F. 2d 615 (C.A. 2, 1953); and *Hill* v. *Commissioner*, 181 F. 2d 906 (C.A. 4, 1950). Perhaps the time has come for us to get in step with the intended spirit of the statute and the regulations. If we do not, surely we are inviting specific legislation.[7]

I would decide this case for the petitioner.

FORRESTER, FAY, *JJ.*, agree with this dissent.

———

TANNENWALD, *J.*, dissenting: I would add only one thought to Judge Dawson's dissent, with which I heartily concur. It may well be that the primary purpose test, impregnated as it has become with the element of subjectivity, provides a haven for the skillful liar. But we are not bereft of talent for determining truth from falsehood—a process which forms the daily grist of judicial life. In any event, we are faced with a condition and not a theory. Against the existing background, if there is to be discrimination among different professions, it should be founded upon specific legislative rather than creeping judicial action.

Indeed, it seems to me that the majority decision makes intervention by the Congress mandatory. I would hope that such intervention would result in a searching examination of how far our tax laws should be utilized to implement our national policy to encourage education. Cf. *Elmer L. Reese, Jr.*, 45 T.C. 407 (1966). Perhaps out of such an examination, the Congress will evolve more precise standards which will enable us in the future to avoid the difficulty in which we now find ourselves.

FORRESTER, FAY, *JJ.*, agree with this dissent.

---

[7] As late as Jan. 23, 1966, an article appeared in the New York Times stating that Representative Jacobs of Indiana has "pledged his support to legislation, if it is needed, to assure teachers the same income tax deductions enjoyed by lawyers." In a letter sent to the Commissioner, Jacobs "complained about the regulations."