MYRON BURNSTEIN AND MURIEL BURNSTEIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8868-74.    Filed June 17, 1976.

*John A. Stassi II,* for the petitioners.
*Dean F. Chatlain,* for the respondent.

RAUM, *Judge:* The Commissioner determined a deficiency of $1,728.70 in petitioners' 1971 income tax. The sole issue before us is the deductibility of certain educational expenses incurred by petitioner Muriel Burnstein in the course of obtaining a master of social work degree.

### FINDINGS OF FACT

The parties have submitted a stipulation of facts which, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioners Myron and Muriel Burnstein are husband and wife. They resided in New Orleans, La., on the date of the filing of the petition herein. Myron is a party to this proceeding solely by virtue of his having filed a joint return with his wife Muriel. Hereafter Muriel will sometimes be referred to as petitioner.

Muriel Burnstein received her B.A. degree from Hunter College in New York in 1942. Prior to enrolling at Tulane University in August 1967, she had not been employed outside her home since serving 3 years in the Navy during the 1940's.

Mrs. Burnstein attended Tulane University from August 1967 until August 1968, when she received the degree of master of

education. The focus of her academic program in connection with this degree was the study of early childhood development.

In October 1968, petitioner began working as a special education teacher at Variety Children's Home. Her duties were to instruct a class of six children, all of whom were dyslexic, in all elementary school subject areas. More than simply teaching these children specific subjects, she provided "milieu therapy" in a classroom setting. Mrs. Burnstein's goal was to help these "learning disabled children" develop the ability to function adequately upon their return to the public school system. At regular intervals she counseled the parents of these children on how to deal with them at home. For her work in this capacity, petitioner was required only to have a bachelor's degree. She retained this job at Variety Children's Home until May of 1970.

Mrs. Burnstein had applied for admission to the Tulane University School of Social Work, in the spring of 1969. Although she was accepted for classes beginning with the 1969 fall semester, she delayed her enrollment until the fall of the following year.

Mrs. Burnstein resigned from her position at Variety Children's Home in May 1970. At that time she neither sought nor obtained a leave of absence from her employer. There was no understanding or agreement between petitioner and the Variety Children's Home that she would be rehired by the home upon the completion of her studies at Tulane.

Petitioner enrolled as a full-time student in the Tulane University School of Social Work in May 1970. Because her classes did not begin until the following August, Mrs. Burnstein devoted the intervening months to reading and independent study of background materials relating to the psychological aspects of family life.

Mrs. Burnstein began her course work at Tulane in August 1970. On December 22, 1971, she received an M.S.W. (master of social work) degree from the Tulane University School of Social Work. She directed her studies within this program toward her major field of interest: early childhood development and the etiology of emotional disturbances of children, with special emphasis on the role of the family, both as a cause of the child's problems and as part of their solution.

From January 1972 through May 1972, Mrs. Burnstein served a postgraduate internship at the Tulane University Health

Center. Her duties consisted of counseling and treating college students in individual and group therapy in a supervised, clinical setting. Mrs. Burnstein was considered an employee of the Health Center during this time and she received $1,200 (through a grant from American Cyanamid) as compensation for her work there.

In June 1972, Mrs. Burnstein worked for the Jewish Family and Children's Service. She counseled families with children who were failing in school or who were otherwise demonstrating antisocial behavior. For this work she was paid $125.

On July 3, 1972, Mrs. Burnstein accepted employment with Touro Infirmary Mental Health Center. The M.S.W. degree was a minimum educational requirement of this job. The Touro Infirmary personnel department position evaluation form describes the job accepted by Mrs. Burnstein as follows:

> This is applied social work at the beginning professional level performed in a psychiatric setting. Work involves the application of social work techniques to the practical and emotional needs of patients and family members. Employees in this grade provide direct therapeutic services to patients and their family members; and provide consultation regarding social and emotional factors to medical and paramedical personnel.

Mrs. Burnstein earned about $9,500 per year from this job.

She left Touro Infirmary in August 1974, and began a private practice of psychiatric social work offering counseling and therapy to children and adults. In this practice, about one-fourth of Mrs. Burnstein's patients were learning-disabled children. Even without her M.S.W. degree, Mrs. Burnstein would have been qualified to provide the services she now provides to these children. However, if she had not obtained the M.S.W. degree she would not have been qualified to counsel the remaining three-quarters of her clients.

Social work is a recognized profession. Although not universally required, the degree of M.S.W. is the widely recognized and generally accepted minimum educational certification necessary for employment as a social work professional.

On their 1971 joint Federal income tax return, petitioners deducted $2,930 as the expenses incurred by Mrs. Burnstein in connection with her study at the Tulane University School of Social Work.

In his notice of deficiency the Commissioner disallowed this deduction in its entirety on the alternative grounds that "it has

not been established that you were engaged in a trade or business at the time the education was undertaken and further, the education qualified you for a new trade or business."

ULTIMATE FINDING OF FACT

Muriel Burnstein's course of study in pursuit of her M.S.W. degree led to qualifying her for a new trade or business.

OPINION

Section 162(a), I.R.C. 1954, and section 1.162-5, Income Tax Regs., permit a taxpayer to deduct expenses incurred for education which is related to the carrying on of a trade or business, only if, inter alia, the education will not "lead to qualifying [the taxpayer] in a new trade or business." Sec. 1.162-5(b)(3)(i), Income Tax Regs. Amounts paid for education which will qualify the taxpayer for a new trade or business "are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses." Sec. 1.162-5(b)(1), Income Tax Regs.

It is well established that "the standards laid down by these regulations are objective ones." *David N. Bodley,* 56 T.C. 1357, 1360. The taxpayer's subjective purpose in pursuing the education is irrelevant here.[1] This condition of deductibility is not satisfied by a showing that the taxpayer did not intend to qualify for a new trade or business nor by a showing that the taxpayer did not intend to and did not in fact carry on such new trade or business. *Patrick L. O'Donnell,* 62 T.C. 781, 783, affirmed per curiam 519 F.2d 1406 (7th Cir.).

Petitioner Muriel Burnstein seeks to deduct the expenses she incurred in obtaining her master of social work degree as ordinary and necessary expenses incurred in the carrying on of her trade or business which she characterized as "helping learning-disabled children through therapy and parent-family counseling." However, the evidence before us establishes beyond doubt, not only that social work is a recognized profession and

---

[1] *Greenberg v. Commissioner,* 367 F.2d 663 (1st Cir.), reversing 45 T.C. 480, cited by petitioner, is thus inapposite. That case was decided on the basis of the pre-1967 regulations which explicitly relied upon a "primary purpose" test. The regulations applicable here were promulgated in 1967 and abolished the "primary purpose" test, substituting objective standards instead. See *Carroll v. Commissioner,* 418 F.2d 91, 94 (7th Cir.), affirming 51 T.C. 213.

that the M.S.W. degree led to petitioner's qualifying to enter that profession, but also that petitioner did in fact enter that profession after she received her degree. Moreover, it is clear from the record herein that the nature of petitioner's work changed substantially after she received her M.S.W. degree. Therefore, we sustain the deficiency determined by the Commissioner.[2]

The Commissioner presented expert testimony to establish that social work is a recognized profession and that the degree of M.S.W. is the usual minimum educational background required of those who practice this profession. Moreover, some 7 months after her graduation, petitioner accepted a job which required her to have the M.S.W. degree.[3] And she has admitted that without the M.S.W. degree, she would not be qualified to provide the services needed by about three-quarters of her present clients. Before receiving her M.S.W. degree, petitioner focused her attention on learning-disabled children. She dealt with their families as corollary elements of the children's therapy. After receiving her degree, petitioner cared for both adults and children and dealt with a much wider range of emotional problems.

Much as we may admire petitioner's dedication to her work—both before and after she received her M.S.W. degree—the statute and regulations simply preclude the deduction she claims.

*Decision will be entered for the respondent.*

---

[2] We need not rule upon the Commissioner's alternative grounds for disallowing the deduction, namely, that petitioner did not incur these expenses "in carrying on" a trade or business. Cf. *Arthur M. Jungreis,* 55 T.C. 581, 588.

[3] This fact suggests a third possible alternative ground for disallowing the deduction, i.e., that the education met the "minimum educational requirements for qualification in [her] employment or other trade or business." Sec. 1.162-5(b)(2)(i), Income Tax Regs.