CHARLOTTE L. WHITE and WENDELL L. WHITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 1183-80.
United States Tax Court
T.C. Memo 1981-512; 1981 Tax Ct. Memo LEXIS 232; 42 T.C.M. (CCH) 1085; T.C.M. (RIA) 81512; September 15, 1981. Charlotte L. White and Wendell L. White, pro se. Jordon P. Weiss, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a $ 1,943 deficiency in petitioners' 1977 income tax. At issue is the correctness of the Commissioner's disallowance of a number of itemized deductions claimed on petitioners' joint return. Petitioners' principal attack on the deficiency, however, is a constitutional challenge, variously stated, to the entire Federal income tax and the conduct of litigation in this Court relating thereto. FINDINGS OF FACT Petitioners, husband and wife, were residents of California when they filed their petition in this Court. They filed a joint Federal income tax return for 1977. In petitioners' 1977 return, the husband's occupation was *233 stated to be "Industrial Engr." and the wife's "Reg. Nurse". The income reported consisted of three items: The wife's wages in the amount of $ 16,484.85 for nursing services; net income in the amount of $ 2,619.97 recorded on Schedule E representing $ 2,962.68 net rentals ($ 8,275.15 gross rentals minus $ 5,312.47 expenses) received from three rental properties minus a $ 342.71 net loss ($ 171.75 gross receipts [1] minus $ 514.16 expenses) on a "Chicken Business" not otherwise identified; and a minor item of $ 5 described only as "Found". [2] No income appears to have been reported from any activity of the husband which could be characterized as that of an "industrial engineer". The Government does not contend that petitioners received any unreported income. In the notice of deficiency the Commissioner did not disallow any of the deductions claimed in Schedule E in respect of the rental properties, but he did disallow *234 $ 324 [3] as a "checken business" loss claimed in Schedule E. At trial and on brief the Government has abandoned the disallowance of the claimed "chicken business" loss. Accordingly, there is no issue either as to the gross rents from the rental properties ($ 8,275.15) and gross receipts from the "chicken business" ($ 171.75) reported in Schedule E, or as to the deductions claimed therein in respect of those items. The only matter in dispute relates to itemized deductions claimed on petitioners' return. The total amount of itemized deductions claimed in Schedule A of the return was $ 14,440.61. [4] By taking into account these deductions and the five claimed exemptions (two for petitioners plus three for dependent children), the return showed the amount of tax to be "None". *235 The summary of itemized deductions claimed in Schedule A was as follows: Medical and Dental Expenses
$ 1,429.70
Taxes
3,201.61
Contributions
3,821.96
Miscellaneous
5,987.34
Total
$ 14,440.61
In the notice of deficiency petitioners were allowed a deduction of $ 1,440 for medical expenses, thereby eliminating that item as a matter in controversy. However, the Commissioner allowed a deduction in the amount of only $ 491 for taxes and only $ 821 for contributions. Petitioners have failed to prove that they made expenditures in excess of these two amounts for the respective purposes. The handwritten entries in Schedule A of the return purporting to list the components of the $ 5,987.34 miscellaneous deductions are confusing. One component appears to be $ 2,000 for "Engineering" expenses. The record fails to show either that there were any "engineering" activities to which this component might relate or that even if there were any such activities they would qualify, in the circumstances of this case, as a business or profession or as a profit oriented venture of either petitioner, or that any expenditures were in fact made that might conceivably be classified *236 as engineering expenses in respect of this item or any other item. At the trial, Mr. White stated without further explanation that this item "goes to a thing called the headband business, and that is a loan of $ 2,000 to our son for the headband business that --". Two other miscellaneous deductions claimed in Schedule A were "Nursing Business Expenses" in the amount of $ 2,179.16 and "Demanded Schooling" in the amount of $ 2,452.85. [5] Although there was reason to believe that the latter item pertained to the compulsory school attendance of petitioners' children, Mr. White stated at the trial that it, like the nursing business expenses, related to Mrs. White's occupation as a registered nurse. *237 During 1977, and for a number of years prior thereto, Mrs. White worked as a registered nurse at St. John's Hospital in Oxnard, California. She did not have a college degree, but in addition to performing nursing services she from time to time did relief or substitute work at the hospital in a managerial or supervisory capacity. It was indicated to her that, although she was not required to do so, it would be advisable to take college courses in management. In addition, she was required to take courses in continuing education related to her nursing work; but to qualify for continuing education credit a course must be registered with the so-called Board of Nursing Education and certified by that Board that it related to the student's work as a nurse. During 1977 Mrs. White was enrolled in a college taking courses which ultimately led to her obtaining a degree of Bachelor of Science in Management in 1978. Only some of the courses taken in 1977 qualified for continuing education credit, and the record does not satisfactorily establish what percentage of the courses taken did in fact so qualify. The degree which Mrs. White received in 1978 entitled her to serve in a managerial *238 position, although she had previously done so in a relief or acting capacity at her hospital. Also, there are other hospitals in which she would not have been employed in a managerial capacity without the degree. The college in which Mrs. White was enrolled was 32 miles from her home and she attended classes there twice a week throughout the year commuting by automobile. She paid $ 1,281 for tuition and $ 21 for books during 1977. In the notice of deficiency the Commissioner allowed deductions in respect of Mrs. White's employment as a registered nurse as follows: Transportation related to educational
expense
$ 673
Education
594
Uniforms
274
$ 1,541
OPINION Although the major portion of the reported income had its source in Mrs. White, the litigation appears to have been dominated on petitioners' behalf by Mr. White. He conducted the trial for petitioners, and he alone signed most of the papers, motions, and other documents submitted to the Court at various stages of the case. Throughout his presentation, particularly in the documentary materials, there is a vigorous -- indeed a zealous or even passionate -- condemnation of the Federal income tax *239 on sweeping constitutional grounds, many of which are impossible to restate in clearly intelligible terms. He has also attacked the part that the Federal Reserve notes play in our money system, and has challenged the right, under the Constitution, of the Court to adjudicate this case. Indeed, in the latter respect he has stated that any judge who thus "accepts jurisdiction * * * will or has admitted Treachery to [sic] Treason * * *", and further that "upon admission of treason in open court a sentence of Death or whatever other punishment the Congress has passed shall accrue". And it may fairly be inferred from the materials filed by him that he regarded the very action of a judge presiding at the trial in open court as potentially an admission of treason. [6] His opening brief does not address on the merits any issue that is presented by the Commissioner's adjustments, but is devoted to extensive and confused elaboration of the foregoing constitutional and related matters. His reply brief undertakes, for the first time, to argue the merits of the Commissioner's adjustments, but such argument is preceded by a lengthy and confusing discussion of his so-called constiutional contentions. *240 And even the discussion of the merits is extensively interlaced with Mr. White's constitutional and related arguments. Such arguments are of a type which the courts have repeatedly rejected and characterized as frivolous; they do not warrant further discussion. See, e.g., United States v. Sibla, 624 F. 2d 864, 866, & n. 1 (9th Cir. 1980); United States v. Campbell, 617 F. 2d 765, 767 (8th Cir. 1980); McCoy v. Commissioner, 76 T.C. 1027 (1981); Hatfield v. Commissioner, 68 T.C. 895, 899-900 (1977); cf. Nyhus v. Commissioner, 594 F. 2d 1213, 1214-1215 (8th Cir. 1979). We therefore turn at once to the matters presented by the deficiency notice, which we must consider, since, unlike many or most so-called tax protesters, petitioners did in fact undertake to present some evidence relating to the deductions in issue. *241 (a) Medical expenses and chicken business loss. Neither of these adjustments is now in issue since, as to the former, the Commissioner has allowed a somewhat greater deduction than that claimed by petitioners, and, as to the latter, the Commissioner has conceded at the trial and on brief the deductibility of the chicken business loss. (b) Taxes. Petitioners claimed on their return a total of $ 3,201.61 of deductible taxes paid in 1977. No evidence whatever was presented as to actual payments made during that year. The Commissioner has allowed a total of $ 491 in deductible taxes for the year. Government counsel explained at the trial that the $ 491 thus allowed consisted of $ 78 gasoline taxes, $ 6 motor vehicle taxes, $ 293 sales taxes, and $ 114 state income taxes. Petitioners have not proved that they are entitled to any deductions for taxes paid in 1977 in excess of these amounts. Mr. White's attempt to include among deductible taxes an item described as "3/4 car expenses" in the amount of $ 2,240.81 was utterly bewildering. His attempt to justify the deduction of several other smaller components of the "Taxes" item was equally unconvincing. The record before *242 us does not warrant approving a deduction for taxes in excess of what the Commissioner has allowed. (c) Charitable Contributions. Petitioners claimed charitable deductions in the aggregate amount of $ 3,821.96. No cancelled checks or receipts or any other documentation (with the single exception of a statement from the First Presbyterian Church which will be commented upon shortly) [7] were offered in evidence to support the claimed deduction. However, on the basis of the evidence we are satisfied that petitioners did contribute $ 189 to St. John's Hospital, which was withheld by the hospital from Mrs. White's wages. And, although we are less sure of the matter, we are prepared to find that petitioners contributed $ 182 to the First Presbyterian Church. We arrive at this conclusion on the basis of the only exhibit offered into evidence by petitioners, which was strenuously objected to by Government counsel. That (unsigned) exhibit contains typewritten entries showing pledges of contributions in the aggregate amount of $ 520 for 1977 and handwritten entries showing actual payments in the aggregate amount of $ 182. This is a far cry from the sum of $ 907 which petitioners *243 claim to have contributed to the church in 1977. The evidence as to other claimed contributions is even weaker. Thus, the claimed deduction for purported contributions totaling $ 250 to "Americans For Constitutional Taxation" raises the question not only whether the alleged donations were in fact made but also whether the donee was an exempt organization. We could not, on the basis of the record before us, answer either of those questions in the affirmative. While it is true that we could probably find, without great confidence, on the basis of testimony that some additional, comparatively small contributions were made to qualifying institutions, we could not in any event arrive at a total amount of charitable contributions exceeding the $ 821 which the Commissioner allowed. Obviously, the Commissioner made a generous application of the *244 Cohan rule (39 F. 2d 540, 543-544 (2d Cir. 1930)). Petitioners have not established that they are entitled to charitable deductions in excess of that amount. (d) Nursing business expenses and "demanded schooling". Although, as indicated in our findings, the deduction claimed on the return for "demanded schooling" may have been intended to relate to his children's compulsory school attendance, [8] Mr. White stated flatly at the trial that this item pertained to Mrs. White's educational expenses. We accordingly consider it together with her nursing business expenses. *245 As detailed in our findings, Mrs. White was a registered nurse, who, during the taxable year 1977, was enrolled in a college taking part-time courses leading to the degree of Bachelor of Science in Management which she in fact obtained in 1978. Some of the courses did relate to her work as a registered nurse and she was given credit therefor in connection with the continuing education requirements applicable to her as a registered nurse. However, other courses such as those involving personnel management and finance did not so qualify. Moreover, upon obtaining her degree Mrs. White became eligible for employment in a managerial capacity in some hospitals, notwithstanding that the degree may not have been indispensable at the hospital which employed her or at another hospital where she had previously worked. The Commissioner attempted to allocate a portion of Mrs. White's educational expenses to those courses that related to her duties as a registered nurse and to exclude from deduction that portion that was identified with the management aspects of her college program leading towards the degree. He thus allocated $ 594 (out of a total of $ 1,281 for tuition and $ 21 for books) *246 as deductible educational expenses, and he further allowed a deduction of $ 673 for transportation related to such educational expenses. [9] In addition, he allowed a deduction of $ 274 for uniforms relating to Mrs. White's occupation as a registered nurse. We cannot find on this record that the Commissioner erred in failing to allow any additional deductions in respect of Mrs. White's nursing activities or the educational expenses connected therewith. [10] Indeed, it is even arguable that Mrs. White was not entitled to any deduction relating to her education expenses because her course of study led to a degree [11] qualifying *247 her for a new trade or business, notwithstanding that some of that education was helpful to her in her then current work. See section 1.162-5(b)(3), Income Tax Regs.; Cf. Reisinger v. Commissioner, 71 T.C. 568, 574-577 (1979); Burnstein v. Commissioner, 66 T.C. 492 (1976); Weiszmann v. Commissioner, 52 T.C. 1106, 1110-1111 (1969), affd. per curiam 443 F. 2d 29 (9th Cir. 1971). However, since the determination of deficiency was not predicated on this theory and the Commissioner in fact allowed the deduction of some portion of these expenses, we do not address this possible issue. *248 (e) Other possible deductions. Although Mr. White made various contentions as to other possible deductions, the evidence was so confusing and unsatisfactory that we cannot say that the Commissioner erred in refusing to allow deductions in excess of what he in fact allowed. The burden was upon petitioners and they have failed to carry it. Decision will be entered under Rule 155. Footnotes
1. Although Schedule E showed gross receipts of $ 171.75, petitioners used $ 171.45 in computing the net loss. ↩
2. Three other minor items of income were reported, not as "income", but as negative amounts under miscellaneous deductions. See note 5, infra↩.
3. It is clear from the language used in the deficiency notice that the Commissioner intended to disallow the entire loss claimed ($ 342.71), but the disallowed amount was stated to be $ 324, obviously eliminating the $ .71 cents and erroneously reversing the last two digits in the dollar amount.↩
4. From this amount there was subtracted $ 3,200, the "zero bracket" amount, which has already been taken into account in the tax tables, leaving an "Excess itemized deductions" in the amount of $ 11,240.61.↩
5. The sum of the foregoing three claimed miscellaneous deductions ($ 2,000 Engineering expenses, $ 2,179.16 Nursing expenses, and $ 2,452.85 Demanded Schooling) exceeds the $ 5,987.34 total miscellaneous expenses claimed. However, the difference is explained by three "negative" deductions which were confusingly recorded under "Miscellaneous Deductions" and which Mr. White explained at the trial represent income. They are $ 24 relating to "Boat & Car", $ 475.67 relating to "Secretarial Business", and $ 145 relating to $ 225 Rental". These three "negative" items are not in issue.↩
6. Among the constitutional arguments made by Mr. White is a contention based on the Second Amendment↩ ("Right to Keep and Use Arms (Tools))". He contends that such right was infringed when the Deputy Clerk and a United States Deputy Marshal required him to remove from the courtroom videotape and recording equipment which he had brought with him in an apparent attempt to establish that the trial of his case in this Court constituted treason.
7. Although Mr. White stated at the trial, and reiterated in the reply brief, that he had a "bag of evidence [receipts] brought to court for reference", the only documentation offered in evidence with respect to charitable contributions or any other claimed deduction was the abovementioned statement from the First Presbyterian Church.↩
8. There is a strong inference based not only on the pleadings but also on other papers filed in this case (as well as on parts of the transcript) that the claimed deduction for "demanded schooling" related at least in part to the compulsory school attendance of petitioners' children. The third assignment of error set forth in the petition reads as follows: c. Educational expenses and transportation were items demanded by state and quasi state demand of slavery and quasi slavery to the battle of the insurrection of ignorance engaged in by "States". In the facts alleged in support of the assignment of error reference was made to the State of California's "demanded daily classroom attendance". And in petitioner's Reply to Respondent's Answer there were allegations indicating that students forced by the state to attend school were "quasi soldiers" and that the Third Amendment to the Constitution requiring "quartering pay for soldiers" was applicable. Further allegations suggested that the Thirteenth Amendment relating to involuntary servitude was also applicable. These confusing positions were reiterated in one form or another in various other parts of the record. Moreover, Mr. White called his youngest son (Tim) to the witness stand who testified that although he wanted to go to school he was prevented from doing so by his father, and that he ultimately went to school only after legal proceedings were brought against the father by local authorities threatening the father with incarceration. We were saddened to hear such testimony from an obviously unwilling witness, particularly when the lad broke into tears. Mr. White pursued the matter further when he called his wife as a witness and obtained testimony that there had been a trial in which it was stated that the boy had to go to school or the father would be put in jail. And he later followed up this point by asking her about expenses ("shelter, * * * food and clothing") incurred in "quartering" the students, apparently in some fashion seeking to support his bizarre position based on the Third Amendment. When told by the Court that it failed to see how paying for the children's keep would be a deductible expense, Mr. White replied that the "schooling was demanded of the state under extortion of me". Moreover, in petitioners' reply brief the following appears: Educational Expenses, since the State Demands Tim attend school under threat of imprisonment (extortion) his expenses also should be deductible, estimated at $ 200 per month or about $ 2,400 for 1977. To the extent that this outlandish position may still be in the case as it might apply to the deduction claimed for "demanded schooling", it would be an understatement to say that it is thoroughly without merit.↩
9. The evidence shows that throughout the year Mrs. White made two round trips a week of 32 miles each by automobile from her home to the college.The total mileage for the year was thus 3,328 miles. However, mileage allowable during 1977 was 17 cents a mile. Rev. Proc. 74-23, 1974-2 C.B. 476, as amended by Rev. Proc. 77-40, 1977-2 C.B. 574↩. Accordingly, the total amount allowable was $ 565.76, or some $ 107 less than the Commissioner allowed.
10. It is true that there was evidence that Mrs. White incurred $ 40 in expenses to attend a weekend conference or seminar relating to her nursing work, and we are satisfied as to the deductibility of that amount. However, it is more than offset by the excessive amount allowed by the Commissioner in respect of Mrs. White's educational transportation expenses relating to nursing activities, as set forth in the preceding footnote. We are satisfied that the Commissioner did not err in his determination as it affected the entire deduction for "nursing business expenses". ↩
11. Another example of Mr. White's many fanciful and far-fetched positions in this case appears in an objection that he made to Government counsel's questioning Mrs. White about the courses that she took to obtain her degree: MR. WHITE: Your Honor, I think this line of questioning is covered under Article 1, Section 10 [sic] where the Government is not to take regard of titles of nobility. A degree is in essence a title of nobility under the German style of titles of nobility.↩