T.C. Memo. 1996-157

UNITED STATES TAX COURT

GERALD L. AND JOY M. ZEIDLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 1587-95, 4121-95.     Filed March 27, 1996.

Gerald L. and Joy M. Zeidler, pro se.

<u>James M. Klein</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

---

[1]    Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies in petitioners' Federal income taxes, additions to tax, and penalties:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|-------------------------------|---------------------|
| 1990 | $4,383 | $202 | $ 877 |
| 1991 | 5,481 | 91 | 1,096 |
| 1992 | 1,964 | 58 | 393 |

After concessions by respondent,[2] the issues for decision are: (1) Whether petitioners are entitled to charitable contribution deductions, under section 170(a) for each of the years in question, for contributions to a local singing group; (2) whether petitioners are entitled to educational expense deductions, under section 162(a) for each of the years in question; (3) whether petitioners are precluded, under section 280A for each of the years in question, from deduction of losses incurred from rental properties; (4) in the event section 280A is not applicable to petitioners' rental properties, whether petitioners have substantiated certain expenses; (5) in the event section 280A is not applicable to petitioners' rental properties,

_____

[2] At trial, respondent conceded the addition to tax under sec. 6651(a)(1) for 1991. Respondent, at trial, made several other concessions, principally with respect to the substantiation of various expenses that were disallowed in the notices of deficiency. Those concessions are noted in the body of the opinion. A Rule 155 computation will be necessary in these cases.

whether petitioners have established basis under section 167(c) as to one of the rental properties for purposes of determining the allowable depreciation deduction for each of the years at issue; (6) whether section 280F(d)(4) precludes petitioners from claiming depreciation on a computer and peripheral equipment located in their home that was used in petitioners' trade or business activity and in petitioners' rental activity; (7) whether petitioners are entitled to a deduction, under section 162(a), for travel expenses attributable to petitioner Joy M. Zeidler (Mrs. Zeidler), who accompanied her husband, petitioner Gerald L. Zeidler (Mr. Zeidler), on two business trips; and (8) whether petitioners are liable for the additions to tax under section 6651(a)(1) and penalties under section 6662(a).

Some of the facts have been stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. Petitioners, husband and wife, were legal residents of Greendale, Wisconsin, at the time their petitions were filed.

During the 3 years at issue, Mr. Zeidler was employed as a production manager at Ladish Co., Inc. (Ladish), at Cudahy, Wisconsin. Ladish was in the foundry business, forging iron and steel products. Mr. Zeidler held college degrees in electrical and chemical engineering. Mrs. Zeidler was also employed at

Ladish during the years at issue until June 1992 as a stenographer. She was classified by her employer as a Steno III, having progressed from Steno I and Steno II. Her work was entirely administrative, and, at some point, in addition to her work as stenographer, she became manager of the company store that stocked gifts and other paraphernalia bearing the Ladish logo. Mrs. Zeidler's employment with Ladish terminated in June 1992 after 18 years of service. She was terminated because of adverse business and economic conditions facing Ladish. For several years prior to 1992, Ladish had been faced with such problems and had, over the years, laid off or terminated employees, beginning with employees having less seniority.

On their Federal income tax returns for 1990, 1991, and 1992, petitioners claimed charitable contribution deductions of $141, $211, and $143, respectively, for contributions to an organization in Greendale, Wisconsin, known as the Cantare Chorale singers (the organization).[3] The organization at one

---

[3] The charitable contribution adjustments in the notices of deficiency were $183, $418, and $143, respectively, for 1990, 1991, and 1992. At trial, the parties advised the Court that the adjustments in the notices of deficiency involved other charities as well as the contributions to the Cantare Chorale singers but that the parties had reached a basis for settlement of the adjustments involving the other charities. The deductions to the Cantare Chorale singers represented the only remaining issue for trial, those amounts being $141, $211, and $143, respectively, for the 3 years at issue. The Court further notes that, in the stipulation of facts filed with the Court, the charitable contribution adjustment relating to the Cantare Chorale singers

(continued...)

time in the past had applied with the Internal Revenue Service (IRS) for recognition as a tax-exempt organization under section 501(c)(3); however, no determination was ever made by the IRS that the organization was a qualified organization under section 501(c)(3). The parties stipulated that the organization was not listed as a tax-exempt nonprofit organization on the U.S. Department of Treasury Cumulative List of organizations pursuant to section 501(c). The organization never pursued its application for recognition as an organization exempt under section 501(c)(3). In the notices of deficiency, respondent disallowed the contributions for the 3 years.

At the time of trial, the organization had been in existence approximately 15 years. It was made up of volunteer singers, numbering approximately 45, from Greendale, Wisconsin, and its environs who were interested in furthering the enjoyment of music in the community and who, in general, "loved to sing". The organization had two public performances each year, one in the spring and one near Christmas. Mrs. Zeidler was secretary of the organization and also served on its executive board, having

---

[3](...continued)
for 1992 is stated to be $193. At trial, counsel for respondent acknowledged that amount to be in error and that the correct amount was $143. Respondent agrees that the amounts at issue for the 3 years were in fact paid by petitioners and that disallowance of the deduction was based solely on respondent's determination that the organization was not an exempt charitable organization under sec. 501(c)(3).

served in those positions 6 or 7 years. In her capacity as an officer, Mrs. Zeidler was familiar with the operational and financial aspects of the organization. For all of the performances, the organization sold tickets, and proceeds were used to defray the expenses of putting on the performances. Any excess monies were carried over to assist in defraying the expenses of subsequent performances, which included the purchase of music, supplies, robes, tuxedos, and dresses for the chorale performances. Financial records of the organization were submitted into evidence from five performances during the years in question. For the five performances, the organization had gross receipts of $10,872.84 and expenses of $9,101.88. The expenses, which were itemized, do not indicate that the organization's funds were used for the benefit of any private individual, and the Court so finds. The sources of funds to the organization were identified as "ticket receipts", "patron money", and "door sales". The distinctions between these categories of receipts were not explained at trial. At no time during its existence did the organization's gross receipts in any given year exceed $5,000.

With respect to this issue, and all other issues in these cases, certain general rules are applicable, one of which is that respondent's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving

that the determinations are in error.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer must be able to point to an applicable statute to show that a claimed deduction comes within its terms.  <u>Interstate Transit Lines v. Commissioner</u>, 319 U.S. 590 (1943).

Section 170(a) allows as a deduction, subject to the percentage limitations of section 170(b), any charitable contribution as defined in section 170(c).  Section 170(c) provides, in part, that the term "charitable contribution" means a contribution to or for the use of "a corporation, trust, or community chest, fund, or foundation * * * organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Petitioners have not satisfied their burden of establishing that the Cantare Chorale singers was an organization exempt under section 501(c), such that contributions thereto would be deductible under section 170(a).

Section 1.501(c)(3)-1(b)(1), Income Tax Regs., provides generally that an organization is organized exclusively for one or more exempt purposes only if the "articles of organization" (a) limit the purposes of such organization to one or more exempt purposes, and (b) do not expressly empower the organization to

engage, otherwise than as an insubstantial part of its activities, in activities that in themselves are not in furtherance of one or more exempt purposes. Section 1.501(c)(3)-1(b)(2), Income Tax Regs., states that "articles of organization" or "articles" includes the trust instrument, the corporate charter, the articles of association, or any other written instrument by which an organization is created.

Petitioners presented no organizational documents to evidence the existence of the Cantare Chorale singers or to evidence that it was organized for one or more exempt purposes under section 501(c)(3). Nor was the Court provided with any other admissible documents or evidence that would set out the organization's purposes so as to meet the organizational test. The Court holds that petitioners have not sustained their burden of proving that the organization was exempt for purposes of

section 501(c)(3).[4] Respondent, therefore, is sustained on this issue.

Petitioners claimed on their Federal income tax returns, as Schedule A, Itemized Deductions, educational expenses of $6,077, $12,436, and $4,855, respectively, for 1990, 1991, and 1992, prior to deduction of the 2-percent floor on miscellaneous itemized deductions under section 67(a). These expenses were incurred by Mrs. Zeidler as a student pursuing weekend college courses at Alverno College, a women's liberal arts college at Milwaukee, Wisconsin. In the notices of deficiency, respondent disallowed the amounts claimed on the ground that the educational expenses qualified Mrs. Zeidler for a new trade or business, and, therefore, the expenses were not deductible under section 1.162-5(b)(3), Income Tax Regs.

---

[4] Petitioners contend that the organization was not required to apply for recognition of sec. 501(c)(3) status because the gross receipts of the organization for each of its taxable years never exceeded $5,000 per year. Sec. 508(a) provides generally that any organization organized after Oct. 9, 1969, shall not be treated as an organization described in sec. 501(c)(3), unless the organization has given notice to the Secretary that it is applying for recognition. Sec. 508(c)(3) exempts from this notice requirement any organization that is not a private foundation, and the gross receipts of which in each taxable year are normally not more than $5,000. The mere fact that the Cantare Chorale singers was not required to give notice that it was applying for recognition as a tax-exempt organization does not, in and of itself, establish that the organization was organized and operated exclusively for a charitable purpose, unless the organization, in fact, establishes that it was so organized and operated exclusively for an exempt purpose. Sec. 1.501(c)(3)-1(b), Income Tax Regs.

As noted above, Mrs. Zeidler possessed a high school diploma when she commenced her employment with Ladish. As a Steno III at Ladish, her duties were essentially the same as those of Steno I and Steno II, from which she had progressed. The curriculum Mrs. Zeidler pursued at Alverno College was toward a Bachelor of Science degree in professional communications with a minor in business management. Mrs. Zeidler graduated with such a degree on May 16, 1992.

Petitioners contend that the sole purpose in Mrs. Zeidler's advanced education was to improve her skills in the work she was doing with Ladish. She pursued the education because she recognized several years earlier that Ladish would ultimately be adversely affected by economic and business conditions that would require permanent layoffs of employees. By having advanced educational training in her field, Mrs. Zeidler felt that she would not be laid off, or, at least, her employment would be prolonged. Although Mrs. Zeidler was permanently laid off in June 1992, she is satisfied that, because of her advanced educational training, her employment with Ladish continued at least 6 or 7 years longer that if she had not earned her degree. Because of her advanced education, Mrs. Zeidler was "held out of seniority", in that other employees having seniority over her were laid off. Petitioners argue that Mrs. Zeidler's advanced education did not qualify her for a new trade or business

because, during the entire period she pursued her advanced education and thereafter, she continued doing the same work. After she was laid off by Ladish, she applied with 30 to 35 employers and was unsuccessful in finding employment, either as a stenographer or in any other position commensurate with her advanced educational training. Petitioners argue that Mrs. Zeidler never intended to pursue a new trade or business and always expected to remain in the same position with her employer.

Section 162 and the regulations thereunder generally allow a deduction for ordinary and necessary business expenses, including expenses of education, which (1) maintain or improve skills required by an individual in his employment or other trade or business, or (2) meet the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. Sec. 1.162-5(a), Income Tax Regs. However, section 1.162-5(b), Income Tax Regs., describes certain educational expenditures that are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or may meet the express requirements of the individual's employer or of applicable law or regulations. As applicable here, such expenditures include those "made by an

individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business."  Sec. 1.162-5(b)(3), Income Tax Regs.

Under section 1.162-5(b)(3), Income Tax Regs., if a taxpayer is pursuing a course of educational study that qualifies the taxpayer for a new trade or business, the expenditures are not deductible whether the studies are required by the employer, whether the taxpayer does not intend to enter a new field or endeavor, and even though the taxpayer's duties are not significantly different after the education from what they had been before the education.  Robinson v. Commissioner, 78 T.C. 550, 556-557 (1982); Bodley v. Commissioner, 56 T.C. 1357, 1360 (1971); Schwerm v. Commissioner, T.C. Memo. 1986-16.

The question of whether an educational expenditure qualifies a taxpayer for a new trade or business requires a "commonsense approach".  Reisinger v. Commissioner, 71 T.C. 568, 574 (1979). "If the education qualifies the taxpayer to perform significantly different tasks and activities than he or she could perform prior to the education, then the education qualifies him or her for a new trade or business."  Browne v. Commissioner, 73 T.C. 723, 726 (1980) (citing Diaz v. Commissioner, 70 T.C. 1067, 1074 (1978), affd. without published opinion 607 F.2d 995 (2d Cir. 1979)); Glenn v. Commissioner, 62 T.C. 270, 275 (1974).  The taxpayer's subjective purpose in pursuing the education is irrelevant, and

the question of deductibility is not satisfied by a showing that the taxpayer did not in fact carry on a new trade or business. Burnstein v. Commissioner, 66 T.C. 492, 495 (1976). The fact that Mrs. Zeidler sought employment unsuccessfully after she obtained her degree does not mean that she had not qualified for a new trade or business. The unfortunate reality is that she was unable to find new employment with her degree because of the same adverse economic conditions that caused her layoff as a stenographer.

Petitioners have not satisfied the Court that, with a bachelor's degree, Mrs. Zeidler was not qualified to engage in an occupation requiring no greater skills than those required by the Steno III position she had with Ladish. One of the documents introduced into evidence consisted of an evaluation of Mrs. Zeidler by Alverno College upon her attainment of the degree in professional communication. That evaluation stated:

> Joy Zeidler has demonstrated the abilities which characterize an Alverno College graduate with a major in professional communication and a support area in business and management. In professional communication they include the ability to adapt messages for a variety of purposes and audiences, to effectively use oral, written, and media modes, to interact effectively with others, and to apply communication theory across a variety of contexts. In business and management these include the ability to take the initiative in identifying and solving problems or opportunities for growth or improvement in organizational settings, to accurately use and communicate the application of concepts and frameworks from business functional areas to problem situations, and to interact effectively in group or organizational contexts.

In Malek v. Commissioner, T.C. Memo. 1985-428, this Court held that the taxpayer, who was employed in an administrative position with duties very similar to those of Mrs. Zeidler with Ladish, and who obtained a Bachelor of Science degree from Alverno College in professional communications, had, by virtue of the educational courses, qualified for a new trade or business. The Court holds, therefore, that the educational expenses incurred by petitioners in the instant cases qualified Mrs. Zeidler for a new trade or business.  Respondent, accordingly, is sustained on this issue.

On their Federal income tax returns for 1990 and 1991, petitioners reported on Schedule E, Supplemental Income and Loss, gross receipts and expenses relating to two residential real estate properties owned by petitioners.  For 1992, petitioners conveyed one of the properties to a corporation wholly owned by them, JMZ Management, Inc.  The corporation qualified as an S corporation under section 1361, and the loss sustained by that corporation was reported by petitioners on their 1992 individual tax return.

In the notices of deficiency, respondent disallowed expenses attributable to one of the rental properties for the 3 years in question under section 280A(a) for the reason that petitioners had used the questioned property for personal purposes during each of the 3 years in question for periods in excess of those

proscribed by section 280A(d)(1), and, therefore, section 280A(a) applied.  Alternatively, respondent disallowed some of the expenses claimed as to both properties for lack of substantiation.  The amounts disallowed were $4,876, $4,400, and $3,567, respectively, for 1990, 1991, and 1992.[5]

Section 280A(a) provides generally that, in the case of an individual or an S corporation, no deduction otherwise allowable shall be allowed with respect to the use of a dwelling unit that is used by the taxpayer during the taxable year as a residence, except as otherwise provided in section 280A.  Section 280A(d)(1) provides generally that a taxpayer is considered as using a dwelling unit as a residence if the taxpayer uses the unit for personal purposes during the taxable year for the greater of 14 days or 10 percent of the number of days the unit is rented at a fair rental.  In such circumstances, where a unit is put to a rental use and is also used by the taxpayer as a residence, the deduction of expenses attributable to the dwelling unit is limited to the gross rental income derived from the property. Sec. 280A(c)(5).

---

[5] The amounts disallowed for 1990 and 1991 do not include the depreciation claimed on the rental unit as to which respondent applies sec. 280A.  The notices of deficiency for these 2 years include a separate adjustment disallowing the depreciation claimed on this property for the additional reason that petitioners had no depreciable basis in the property.  That same issue carries over to 1992 in respondent's disallowance of the S corporation loss.  The depreciation adjustment, therefore, is addressed as a separate issue.

Based on the evidence presented at trial, the Court is satisfied that petitioners did not use the questioned property as a residence for each of the years at issue for periods that would exceed the time periods set out in section 280A(d)(1). Although petitioners made several visits to the property during the years in question and, on one or two occasions used the property as a residence well under the 14-day/10 percent standard, the visits to the property were essentially for maintenance. The Court, therefore, sustains petitioners on this issue, that section 280A(c)(5) does not preclude petitioners from claiming losses from this property in excess of the rentals therefrom.

Respondent's alternative adjustment to petitioners' deductions from rental activities relates to the 1991 tax year on the same property discussed above, as to which $313 expenses for supplies, $596 for meals, and $1,059 for automobile travel were disallowed for lack of substantiation. On this record, the Court sustains respondent as to the three items. Petitioners presented no proof, such as bills, receipts, or canceled checks, to establish that they incurred the $313 expense for supplies. As to the automobile and meal expenses, records for these expenses were also not produced. Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including, under section 162(a)(2), "traveling expenses (including amounts

expended for meals and lodging* * *) while away from home in the pursuit of a trade or business".  Section 274(d) provides further that, to substantiate such expenses, the taxpayer must maintain adequate records that include maintaining an "account book, diary, log, statement of expense, trip sheet, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure".  Sec. 1.274-5(c)(2)(i), Income Tax Regs.[6]  The substantiation requirements of section 274(d) apply to automobile expenses by virtue of section 280F(d)(4) and to expenses connected with other classes of property referred to as "listed property" and defined in section 280F(d)(4).  Section 280F(d)(4)(A)(i) and (ii) includes any passenger automobile or any other property used as a means of transportation.  Petitioners did not maintain the records required by section 274(d) to substantiate their meals and automobile expenses.  Respondent, therefore, is sustained on this issue.

As noted earlier, petitioners owned two residential rental properties as to which they reported their income and expenses on Schedule E of their returns.  One of the properties was a single family home located at Sister Bay, Wisconsin, a popular resort and vacation area located 90 miles north of Milwaukee, Wisconsin.

---

[6]    Under sec. 274(d)(1), the substantiation requirements for traveling expenses are applicable to expenses under sec. 162, as well as expenses under sec. 212.

Petitioners claimed straight-line depreciation deductions on this property (the Sister Bay property) of $1,920 for each of the years 1990 and 1991. In the notices of deficiency, respondent disallowed the entire amounts claimed for the reason that petitioners had not established their cost or basis for the property.[7]

Petitioners acquired the Sister Bay property in two stages-- an undivided one-half interest in 1988 and the other one-half interest in 1989. They submitted in evidence two quitclaim deeds to substantiate their acquisition of these undivided interests. The deeds, however, make no recitation of the consideration paid for the property. The property was acquired from Mrs. Zeidler's parents, and petitioners contend they paid $70,400 for the property. Petitioners calculated their depreciation for 1990 and 1991 based on $52,800 as the cost of the house and improvements, with a useful life of 27.5 years.

Petitioners contend the $70,400 cost of the property was paid by them, as follows:

```
$18,400  in satisfaction of a prior loan by Mrs. Zeidler to her parents
 40,000  in cash that petitioners received over a period of 2 years as gifts
             from Mr. Zeidler's parents
  8,000  approximately the amount petitioners paid in cash from their own
             funds
  4,000  approximately an amount owing by Mrs. Zeidler's parents to
             petitioners for work Mr. Zeidler performed on the retirement
             home of Mrs. Zeidler's parents in North Carolina
$70,400  TOTAL
```

---

[7] This is the issue referred to in _supra_ note 5.

Petitioners offered at trial, to establish payment of the above amounts, three checks totaling $4,702. However, all three checks bear notations that all or portions of the checks are for taxes. No credible documentary evidence was presented that would satisfy the Court that petitioners paid any amounts to acquire the property. The court is satisfied, however, that petitioners have record title to the property; that the property was held for residential rental purposes; and that petitioners have been reporting the income and expenses for this property for Federal income tax purposes. When certain claimed expenses are not adequately substantiated, but the Court is satisfied from the record that expenses were in fact incurred by the taxpayer, and a basis upon which an estimate of the expenses can be made, this Court may determine and allow the taxpayer a deduction for the expense claimed. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). The Court, accordingly, estimates that petitioners paid $8,250 for the house and improvements and, assuming a useful life of 27.5 years (which respondent does not dispute), allows petitioners a depreciation deduction of $300 for each of the years at issue.[8]

---

[8] For 1992, the rental activity of the Sister Bay property was reported by JMZ Management, Inc., a corporation owned by petitioners, an S corporation under section 1361. On their 1992 Federal income tax return, petitioners reported a loss of $3,567 from JMZ Management, Inc., which included a depreciation deduction of $1,920 claimed by JMZ Management, Inc., on Form
(continued...)

On their Federal income tax returns for 1990 and 1991, petitioners claimed, on Schedule C of their returns, Profit or Loss From Business, depreciation deductions of $2,751 and $1,800, respectively, on a computer that was located in petitioners' home. Petitioners contend the computer was used 80 percent in connection with a financial services activity that Mr. Zeidler conducted out of their home, and for which petitioners reported their income and expenses on Schedule C of their returns. Petitioners contend that the computer was used 20 percent in connection with two residential rental properties petitioners owned, and as to which petitioners reported their income and expenses on Schedule E of their returns, Supplemental Income and Loss (From rents, royalties, partnerships, estates, trusts, REMICs, etc.). In the notices of deficiency, respondent disallowed the depreciation deductions claimed with respect to the computer for both years. Respondent contends that the claimed deductions were not substantiated pursuant to section 274(d)(4). On their income tax returns for 1990 and 1991, petitioners also claimed deductions on Schedule C of their returns for expenses relating to the office in their home that

[8](...continued)
1120S, U.S. Income Tax Return For An S Corporation, filed by JMZ Management, Inc., for 1992. Respondent disallowed the loss of $3,567 reported by petitioners. Petitioners are entitled to a $300 depreciation deduction for 1992 for the Sister Bay property for the reasons discussed above.

was used in connection with their trade or business and in connection with their investment property. In the notices of deficiency, respondent disallowed the home office deductions for 1990 and 1991 on the ground that the office was not used exclusively for business under section 280A. At trial, however, respondent conceded the adjustments relating to petitioners' home office expenses, and further conceded petitioners were entitled to home office deductions based on 120 square feet of space rather than 110 square feet claimed by petitioners on their returns.

Section 274(d) provides that no deduction shall be allowed with respect to "listed property" as defined in section 280F(d)(4), unless the taxpayer substantiates by adequate records or corroborative evidence (A) the amount of the expense, (B) the time and place of use, (C) the business purpose, and (D) the business relationship of the taxpayer to the persons using listed property. Sec. 274(d)(4). Petitioners did not maintain such records with respect to their computer.

The term "listed property" under section 280F(d)(4) includes any computer or peripheral equipment. Sec. 280F(d)(4)(A)(iii). However, section 280F(d)(4)(B) provides generally that the term "listed property" shall not include any computer or peripheral equipment used exclusively at a regular business establishment, and any portion of a dwelling unit shall be treated as a regular

business establishment if the requirements of section 280A(c)(1) are met.  Section 280A(c)(1), in turn, allows deductions allocable to the portion of a dwelling unit that is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer.  As noted above, respondent at trial conceded petitioners' entitlement to a home office deduction for the portion of their dwelling used in connection with their trade or business and rental properties. With this concession, it follows that petitioners' computer is excepted from the definition of "listed property" under section 280F(d)(4)(B); thus, the strict substantiation requirements of section 274(d) are not applicable.  Petitioners substantiated their purchase of the equipment, and the Court is satisfied that the computer was used for business and investment purposes. Petitioners, therefore, are entitled to depreciation deductions on their computer for the 2 years at issue.

The trade or business activity of petitioners previously referred to was conducted by Mr. Zeidler under the trade name of GLZ Financial Services.  He provided consulting and estate planning services and was also licensed to sell insurance. Petitioners reported their income and expenses from this activity on Schedule C, Profit or Loss From Business, of their returns. In the notices of deficiency, respondent disallowed several of the expenses claimed by petitioners for each of the years in

question.  At trial, counsel for respondent advised the Court that petitioners had established their entitlement to deductions for all the disallowed expenses, except for the following expenses for the 1990 tax year:[9]

$930 -- Supplies
 162 -- Meals
 299 -- Other expenses
 909 -- Travel

The Court sustains respondent on each of these items. Petitioners did not sustain their burden of establishing their entitlement to a deduction for these expenses.  The meals and travel expenses were additionally subject to the substantiation requirements of section 274(d), discussed earlier in this opinion, and petitioners' records as to the meals did not comport with the record keeping requirements of section 274(d).  The $909 travel expense item, however, was disallowed by respondent for a different reason:  the expense related to that portion of Mrs. Zeidler's travel with Mr. Zeidler on two trips during 1990.  One trip was to North Carolina, and the other trip was to Birmingham, Alabama.  Respondent allowed a deduction for that portion of the trips allocable to Mr. Zeidler but denied the portion allocable to Mrs. Zeidler on the ground that the trips, as to her, were not

---

[9]    Depreciation of the computer for the 3 years was also one of the Schedule C expenses disallowed that respondent did not concede but that issue has been considered by the Court above.

related to Mr. Zeidler's trade or business activity. The Court agrees with respondent. Petitioners did not establish that Mrs. Zeidler's accompaniment of her husband on these trips was in any way related to or contributed to Mr. Zeidler's business. The trip to North Carolina was during the Christmas season and included a visit to Mrs. Zeidler's parents. There was no showing that Mrs. Zeidler participated in any activity related to Mr. Zeidler's trade or business. Petitioners failed to show any business purpose for Mrs. Zeidler on the Birmingham, Alabama, trip. The $909 expense is considered a personal expense and is not deductible under section 262. Respondent, therefore, is sustained on this issue.

Petitioners' 1990 income tax return was signed on November 4, 1991, and was received by the IRS on November 8, 1991. Petitioners had obtained an automatic extension that extended the filing period for their 1990 return to August 15, 1991. Petitioners signed their 1992 return on August 12, 1993; however, respondent alleged on brief that the envelope in which petitioners mailed their return to the IRS bore a postmark date of August 24, 1993, and was received by the IRS on August 28, 1993. Petitioners also obtained an automatic extension to file their 1992 return on or before August 15, 1993. Respondent determined the addition to tax under section 6651(a)(1) for both years. At trial, petitioners presented no evidence on this issue

to prove that either return was mailed or filed on time. Respondent, therefore, is sustained on these additions to tax.

Respondent determined the penalty under section 6662(a) for negligence or disregard of rules or regulations for the 3 years in question. Section 6662(a) provides that, if it is applicable to any portion of an underpayment in taxes, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies. The penalty is applicable to any underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the IRS laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Under section 6664(c), no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion, and that the taxpayer acted in good faith with respect to such portion.

On this record, the Court holds that petitioners are liable for the penalty under section 6662(a). Petitioners claimed deductions for educational expenses on facts that were very

similar to the facts of <u>Malek v. Commissioner</u>, T.C. Memo. 1985-428, wherein this Court held such expenses were not deductible. Petitioners did not maintain books and records as required by section 6001 to substantiate other deductions and, in particular, expenses subject to section 274(d). Petitioners claimed depreciation on an asset although petitioners had scant evidence as to its basis. Finally, one of the expenses claimed as a business expense was found to be for the personal enjoyment of Mrs. Zeidler. On this record, the Court sustains respondent on the penalty under section 6662(a).

<u>Decisions will be entered under Rule 155.</u>